CASE 26—PROCEEDINGS BY COMMONWEALTH BY AUDITOR'S AGENT TO
RECOVER BACK TAXES FROM W. J. THOMAS, TRUSTEE.—DEC. 6.

# Commonwealth v. Thomas.

APPEAL FROM SHELBY CIRCUIT COURT—WILLIAM CARROLL, CIRCUIT
JUDGE.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

TAXATION—EXEMPTIONS—CHURCH PROPERTY—CHARITIES—SHARES OF
STOCK—RECOVERY OF BACK TAXES—LIMITATIONS.

1. Constitution, section 5, prohibits the giving of a preference
to any religious sect or ecclesiastical system, and provides that
no person shall be compelled to attend worship, contribute to
the erection of a place of worship, or to the salary of a minister
of religion, and that the civil rights of no person shall be in any
way diminished or enlarged on account of his belief or disbelief
of any religious teaching. Section 189 provides that no portion
of any fund that may be raised for educational purposes shall
be appropriated to any sectarian school. Section 170 exempts
from taxation places actually used for religious worship, with
the grounds attached thereto, and parsonages or residences owned
by any religious society and occupied as a home by its minister.
HELD, that a trust fund devoted to the propagation of the prin-
ciples of primitive Christianity, as taught by the Christian church
by means of the employment of an evangelist and otherwise, is
not exempt from taxation on the ground that it is church prop-
erty.

2. A trust fund devoted to the propagation of the principles
of primitive Christianity, as taught by the Christian church,
is not a "purely public charity," within the meaning of Con-
stitution, sec. 170, exempting such charities from taxation.

3. Under Kentucky Statutes 1903, sec. 4088, exempting the
individual stockholders of a corporation from taxes on their
stock where the corporation is required to pay taxes upon the
corporate franchise, a trust fund invested in the stocks of cor-
porations which have paid the tax required by law can not be
taxed again in a proceeding to recover back taxes.

4. In proceedings to recover back taxes, the property sought
to be reached can only be assessed for the five years next pre-
ceding the institution of the action.

Commonwealth v. Thomas.

JAMES M. GUTHRIE AND PHIL. J. BEARD, ATTORNEYS FOR APPEL-
LANT.

1. We insist that the Constitution in exempting charitable
institutions had something in mind when it used the word "in-
stitution" different from what was meant by the legislative
exemptions when it exempted "funds devoted to charitable pur-
poses." If the meaning of these phrases were the same, the
convention would have adopted the phraseology of the prior
legislative acts, which had been in the statute for a great many
years. The word "institution" has a fixed and definite meaning,
and as used in the Constitution was intended to limit the ex-
emptions and restrict them in what they had formerly been.

2. The ground of exemption of property from taxation is
based on its public benefits. Under the Constitution no public
charity can be exempt from taxation that could not be aided
by funds out of the public treasury.

3. The Constitution contemplated temporal, not spiritual, bless-
ings—that it must be a substantial earthly charity, and not an
intangible and ethereal one.

### AUTHORITIES CITED.

Kentucky Statutes, sec. 4241; Widows and Orphans' Home v.
Bosworth, 23 L R., 1506; Com. v. Lexington Cemetery Co., 24
Law Rep., 926; City of Newport v. Masonic Temple Assn., 21 Ky.
Law Rep., 1785; Crawford's Heirs v. Thomas, Trustee, 21 Ky.
Law Rep., 100; Trustees of Ky. Female Orphans' School v. City
of Louisville, 100 Ky., 483; Bosworth, Sheriff, v. Ky. Chautauqua
Assembly, 23 Ky. Law Rep., 1394; Constitution, sec 189; Consti-
tution, sec. 3; Constitution, sec. 5; Dodge v. Williams, 46 Wis.,
100; Richmond County v. Bohler, 80 Ga., 161; Manchester v.
McAdams, A. C., p. 500; Louisville Ferry Co. v. Com., 22 L. R.,
480: Butler v. Watkins, 16 Law Rep., 302; Ky. Stat., sec. 4020;
Constitution, sec. 170.

WILLIS & TODD, ATTORNEYS FOR APPELLEE.

1. The constitutional convention was made up of lawyers, many
of them able and especially versed in the Kentucky law. They
knew what the Kentucky statute defined as such, and they knew
that gifts like the one now under consideration had been defined
and held from time out of mind as charities, and the conclusion
is inevitable when they did exempt charities they meant to
exempt that character of institutions or that class of funds or
Vol. 119—14

Commonwealth v. Thomas.

property that had theretofore been defined by our lawmakers and by the courts of last resort as charities.

2. We desire to insist that there is nothing sectarian or denominational in this charity. It is true that the instrumentality selected by the testratrix does belong or is connected with a denomination, but we do not judge the matter as a charity by the instrumentality selected to affect its purpose, but we judge it by the object to be obtained, and the object sought to be obtained by this fund is the advancement of Christianity, which we have shown is equivalent or synonymous with the word religion, and which all courts hold to be the highest of all charities; but if it was sectarian or denominational advancement sought, it would not affect the fact that it was a public charity.

3. When the framers of the Constitution used the word "institution," they meant such funds, organizations, devises, or gifts as were permanent in their operation and benefits, and to contradistinguish them from mere gifts given perhaps temporarily to avoid the payment of taxes, or some other temporary and perhaps selfish purpose.

### AUTHORITIES CITED.

Statutes, 4241; Statutes, 4088; Bean v. Scobee, Ky. Law Rep., —; Henderson Nat. Bank v. City of Henderson, 19 Ky. Law Rep., 728; Judson on Taxation; Gen. Stat., sec. 1, c. 13; Statute of Elizabeth; Statutes of 1814; Statute of 1892; Moore's Heirs v. Moore's Devisees, 2 Dana, 177; Attorney General v. Wallace, 7 B. Mon., 617; Kinney v. Kinney's Exr., 86 Ky., 611; Ford v. Ford's Exr., 91 Ky., 573; City of Covington v. Commonwealth, 19 Ky. Law Rep., 105; Simpson v. Welsome, 72 Maine, 496; American Tract Society v. Altwalter, 30 Ohio; Kinkley v. Thatcher, 139 Mass., 477; Sowers v. Cryrenius, 39 Ohio, 29; Perry on Trusts, sec. 701; Ky. Law of Real Property, Ballar, sec. 379; Crawford's Heirs v. Thomas, Trustee, 21 Law Rep., 1100; Trustees Kentucky Female Orphan School v. City of Louisville; Same v. Eell, Sheriff, 100 Ky., 470; City of Louisville v. Southern Baptist Theo. Sem., 100 Ky., 506; City of Louisville v. Board of Nazareth Lit. & Ben. Inst., 100 Ky., 518; Black's Law Dictionary, 631; Amer. & Eng. Ency. of Law, vol. 11, 237; Commonwealth, by, &c. v. Gray's Trustee, 25 Law Rep., 52; W. F. Norton's Exor. v. City of Louisville, Oct. 25, 1904.

OPINION OF THE COURT BY JUDGE BARKER—REVERSING.

Mrs. Pauline Crawford died in Shelby county, Ky., leav-

ing a last will and testament, which contained the following:

"Item 12. I give and bequeath to W. J. Thomas, as trustee, the sum of five thousand dollars, the interest of which sum to be used in securing an evangelist in Shelby county, or any other section of the country said Thomas may select. Said sum shall be held by him and his successors in perpetuity. Said W. J. Thomas may select his successor who must give bond, and security approved, and said successor or successors must in every instance be members of the Christian church. And furthermore the proceeds of said sum or sums shall be expended in the advancement of the principles of primitive Christianity, as taught by the Christian church.

"Item 13. I direct that my executor shall pay over to a trustee whom he may select, the residue of my estate, the interest of said sum to be used in the advancement of the principles of primitive Christianity as taught by the Christian church subject to the same conditions as are contained in item 12."

The question presented by this record is whether or not the charity thus established is subject, in the hands of the trustee, to State taxation. Whether it is or not depends upon the proper construction of section 170 of the Constitution of this State with reference to it. The constitutional provision referred to is as follows: "Sec. 170. There shall be exempt from taxation public property used for public purposes; places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one half acre in cities or towns, and not exceeding two acres in the country; places of burial not held for private or corporate profit, institutions of purely public charity, and institutions of education

not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education; public libraries, their endowments, and the income of such property as is used exclusively for their maintenance; all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto; household goods and other personal property of a person with a family not exceeding two hundred and fifty dollars in value; crops grown in the year in which the assessment is made, and in the hands of the producer; and all laws exempting or commuting property from taxation other than the property above mentioned shall be void. The General Assembly may authorize any incorporated city or town to exempt manufacturing establishments from municipal taxation, for a period not exceeding five years, as an inducement to their location."

That the trust under discussion is a charity does not admit of doubt, but, in order to entitle it to exemption from taxation, it must be a "purely public charity." Without undertaking to be technically accurate, a "purely public charity" may be defined as one which discharges, in whole or in part, a duty which the Commonwealth owes to its indigent and helpless citizens. Undoubtedly it is the duty of the State to educate its poor children, and thus fit them for discharging the duties of citizenship, to care for the indigent insane, its helpless orphans, and its poor who are sick and afflicted; and therefore any institution which, serving no selfish interest, discharges, in whole or in part, any such duty, is a purely public charity. Under this head would come schools for orphans, the property of the organi-

zation known as Young Men's Christian Association, etc. But it is not within the province, nor is it the duty of the State to teach or disseminate religion as such; it having always been the policy of our government to leave the propagation of religion to the zeal of the sects, with the certain confidence that its interest is best subserved in their hands.

Our forefathers suffered persecution as one of the evils flowing from the union of church and State, and, when they established constitutional government on this continent, they saw to it that they were forever separated by affirmative provision in the fundamental law of the land. By section 5 of our present Constitution it is, thus declared: "No preference shall ever be given by law to any religious sect, society or denomination; nor to any particular creed, mode of worship or system of ecclesiastical polity; nor shall any person be compelled to attend any place of worship, to contribute to the erection or maintenance of any such place, or to the salary or support of any minister of religion; nor shall any man be compelled to send his child to any school to which he may be conscientiously opposed; and the civil rights, privileges or capacities of no person shall be taken away, or in any wise diminished or enlarged, on account of his belief or disbelief of any religious tenet, dogma or teaching. No human authority shall, in any case whatever, control or interfere with the rights of conscience." And this was incorporated in every Constitution adopted by this State. Section 189 is as follows: "No portion of any fund or tax now existing, or that may hereafter be raised or levied for educational purposes, shall be appropriated to, or used by, or in aid of, any church, sectarian or denominational school."

It does not require profound reflection to reach the conclusion that whatever deficit there is in the fiscal budget due

the State for any given year by reasons of exemptions of property which would otherwise be required to contribute to the common weal is cast as an additional burden upon the other taxpayers; and it results, therefore, that every exemption is indirectly an additional tax upon the property owners not enjoying a like benefaction. It would follow, therefore, that an exemption in favor of property devoted to the advancement of any particular religious belief is indirectly, at least, a tax upon all the other property owners of the Commonwealth to support that belief. Construing sections 5, 189, and 170 of the Constitution in *pari materia* we are irresistibly forced to the conclusion that "places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country; . . ." all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto," constitute all church property which it is the purpose of that instrument to relieve from the burdens of taxation.

If such property as the trust involved herein is exempt as a "purely public charity," there is no necessity for the specific exemption in section 170, for, if the language "purely public charity" embraces any part of the property of a sectarian denomination, it embraces it all, and it is therefore entirely useless to specify the exemption of a house of worship, and the parsonage, if all church property is exempt under the general expression "purely public charity." We conclude that the trust established by the will of Mrs. Craw-

ford was a private charity, and consequently not exempt from taxation.

It may not be improper for us to say, in order to save further litigation when the case returns to the lower court, that, in so far as the fund was invested in the stocks of corporations which had paid the taxes required by law, it can not be taxed again in this proceeding. Section 4088, Ky. St., 1903. And the right to subject the trust to assessment for taxation is limited to five years next preceding the institution of this action. Commonwealth v. Nute, 115 Ky., 239, 72 S. W., 1090, 24 Ky. Law Rep., 2138.

For the reasons indicated, the judgment is reversed for proceedings consistent herewith.

Judge Paynter dissenting.