## Commonwealth, By et al. v. First Christian Church of Louisville, Kentucky.

### Same v. Starks.

(Decided March 24, 1916.)

Appeals from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Taxation—Assessment of Real Property—Equitable Owner.—It is the duty of the equitable owner of real property to list it for taxation and to pay the taxes thereon, whether he has it in possession or not.

2. Taxation—Property of Religious Societies—Exemption.—Where the owner of real property receives rent for the use of the property by a religious society as a place of religious worship, it is not exempt from taxation, as a "place actually used for religious worship," under section 170, of the constitution.

3. Taxation—Funds of Religious Societies—Exemption.—Funds acquired by a religious society from the sale of a "place actually used for religious worship," for the purpose of providing for itself another place for religious worship, and are so used, are not

subject to taxation while being held for the purpose of being presently so used.

ROWAN HARDIN for appellants.

H. L. STONE, HENRY M. JOHNSON and M. S. BARKER for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

These two causes were, by the parties, agreed to be heard and determined together.

On the 4th day of February, 1909, the appellee, First Christian Church, of Louisville, Kentucky, which is a corporation created by a special act of the General Assembly for religious purposes, by its trustees, entered into a contract with the appellee, John P. Starks. The contract was reduced to writing and subscribed by the parties and delivered. The contract is in words and figures as follows:

"This Article of Agreement, made and entered into by and between the First Christian Church of Louisville, Kentucky, by its trustees, Joseph P. Torbitt, Henry L. Stone, William S. Caldwell, Thomas J. Minary, and William E. Grinstead (duly authorized and empowered by a vote of the congregation of said church to sell the property of said church as hereinafter described) and John P. Starks, of the said city and state.

"Witnesseth: That the said trustees have this day sold and by these presents do sell and agree to convey to said Starks the property of said church, located in the city of Louisville, Kentucky, on the northeast corner of Fourth and Walnut streets, fronting eighty-two (82) feet on Walnut street, and running back of that front between parallel lines and binding on Fourth street one hundred and sixty (160) feet to an alley, in consideration of which said Starks agrees and promises to pay to said trustees the sum of three hundred and fifty thousand ($350,000.00) dollars, as follows, to-wit: He will pay one hundred thousand ($100,000.00) dollars, in cash, upon the execution of this agreement, upon which the church will allow him interest at the rate of 3% per annum from the date of said payment until the delivery to him of the possession of said property, as hereinafter provided; and in addition to said one hundred thousand ($100,000.00) dollars, he will pay upon demand from

time to time such sums of money in amounts of five thousand ($5,000.00) dollars, or multiples thereof, as shall be needed from time to time by said church to make payments upon the construction of the new church which is to be built, upon which payments, in excess of said one hundred thousand ($100,000.00) dollars, the said Starks shall be credited with interest at the rate of 5% per annum from the date of each such payments until the delivery to him of the possession of said property, as hereinafter provided; and when possession of the property herein provided for is delivered to said Starks he will pay the balance of the purchase price in cash, or in equal payments due in one and two years, respectively, from the date said church is vacated and possession thereof is surrendered and deed made therefor to said Starks by said trustees, with interest thereon from that date at the rate of 6% per annum until paid, for which notes will be given by said Starks to said trustees with a lien retained on said property to secure the payment thereof; said balance of the purchase price to be ascertained by deducting from three hundred and fifty thousand ($350,000.00) dollars the said sum of one hundred thousand ($100,000.00) dollars with interest at the rate of 3% per annum from the date of its payment to the date of ascertaining said balance, and deducting further such additional sums as shall have been paid by said Starks prior to said settlement, with interest on each of them at 5% per annum from the date of its payment to the date of said settlement, and deducting further the amount of the present usual real estate agent's commission for the sale of said property.

"It is further agreed between the parties aforesaid, that the said church property shall remain in the possession of said trustees to be actually used for religious worship until the permanent new church, which is to be built by the said First Christian Church, shall be sufficiently completed for religious worship to be held therein, at which time they will vacate the property covered by this contract and deliver possession thereof and a good and sufficient deed therefor to said John P. Starks, and at which time the balance of said purchase price will be ascertained and paid, or notes given for the same, in the manner hereinbefore stated. Should the church building now on said property be wholly or partially destroyed by fire or otherwise before the time possession

is to be delivered, as hereinabove provided for, such loss shall be sustained by said Starks, but meantime he shall have the right to insure said building from loss by fire for his own benefit.

"It is also agreed that said trustees shall have the right to remove from said property all the stone work in front of the church building thereon, including the stone columns, and to remove all furniture, the organ, seats, carpets, and any other movable articles that may be classed as furniture.

"In Testimony Whereof, the said parties hereunto confirm this agreement by subscribing their names hereto in triplicate, this February 4, 1909.

"FIRST CHRISTIAN CHURCH OF LOUISVILLE, KY.
"By J. P. TORBITT,
"HENRY L. STONE,
"WILLIAM S. CALDWELL,
"THOMAS J. MINARY,
"WILLIAM E. CALDWELL,
"Trustees.
"JOHN P. STARKS.
"By J. P. Torbitt, Atty."

The property, the sale of which was evidenced and made by this contract, was a church and attached grounds, which had been in use as a place of religious worship, by the congregation of the First Christian Church, for many years. The First Christian Church, under the terms of the contract, remained in possession of the property and used it for a place of religious worship until in October, 1911, when it executed a deed to it to appellee, Starks, and delivered the possession of the property to him, and at that time he paid the remaining balance of the purchase price, which he had agreed to pay for it. Although, according to the terms of the contract, he was to pay $100,000.00 of the agreed purchase price upon the execution of the contract, he paid only $90,000.00 of it between that time and September 1st, 1909. The $90,000.00 was made in two payments, one of which was $85,000.00 and the other $5,000.00. Between September 1st, 1909, and September 1st, 1910, $5,000.00 more was paid, and between the latter date and October 16th, 1911, and on the latter date the balance of the purchase money was paid. On the latter date the First Christian Church, by its trustees, executed and

delivered a deed of conveyance to Starks for the property.

The church building and its attached grounds, which had been purchased by Starks, was not listed nor assessed for taxation, in the name of anyone, for the years 1910, 1911, and 1912. The appellant, by one of its revenue agents, instituted a proceeding in the county court for Jefferson county against the appellee, Starks, wherein it was sought to have the property assessed for taxation for state and county purposes for the said years, as the property of appellee, Starks. He resisted the effort and the county court sustained a demurrer to the proceeding and it was dismissed. Thereafter appellant appealed to the circuit court, where the demurrer was again sustained and the statement and proceedings dismissed, and an appeal was had to this court.

The contention made by appellee is, that during the years 1909, 1910, and until October 16th, 1911, the property was owned by the First Christian Church and that he did not become the owner of it until the deed was delivered to him for it, on the last mentioned date, and not having an interest in it, which was taxable, on the dates for the assessment of property for purposes of taxation, on the first day of September of the years 1909, 1910, and 1911, respectively, he cannot be made liable for the taxes upon it. An examination of the terms of the contract between the appellees does not leave much space for this contention to stand upon. When the writing undertakes to state the chief purposes of the parties to it, the following language is used:

"That the said trustees have this day sold and by these presents do sell and agree to convey to said Starks the property of said church, located, etc. * * * in consideration of which said Starks agrees and promises to pay to said trustees the sum of three hundred and fifty thousand dollars, etc."

The contract likewise provides, that in the event the building should be wholly or partially destroyed by fire or otherwise, before the possession of it should be delivered to Starks, the loss should fall upon him, and that he might insure it for his benefit, and, further, provided that the trustees should have the right to remove from the property all the stone work in front of the church building thereon, including the stone columns, and all the furniture, including the organ, seats, carpets,

and other movable articles, which might be classed as furniture. The purchase price was to be paid as follows: $100,000.00 upon the execution of the contract, and the remainder in sums of $5,000.00 and multiples of that sum, upon demand of the trustees, as it might be needed from time to time to make payments upon the construction of a new church to be built, and upon the execution of the deed and the delivery of the property to him, Starks was to pay any balance of the purchase price remaining unpaid or execute his notes for same, with a lien upon the property to secure their payment. The possession was to be given when a new church building, to be erected by the trustees, should be ready for use for religious worship, when the property purchased by Starks should be vacated. These provisions negative the contention that it was not a sale of the property, or that the parties had any other thing in contemplation. There was no condition provided for upon which either of the parties could escape the obligations imposed by the contract, and there was no event provided for, upon the happening of which, that either of the appellees could be released from performing the obligations which it imposed upon them. Either of the appellees could enforce the terms of the contract as against the other. The transaction, so far as vesting the equitable title to the property in appellee, Starks, is not distinguishable from the ordinary sale of real estate by the execution and delivery of a title bond. It made Starks the real or equitable owner of the property. The legal title was left to the church, which, under the terms of the contract, it could be compelled to transfer to Starks.

Section 4023, Kentucky Statutes, provides:

"The holder of the legal title, and the holder of the equitable title, and the claimant or bailee in possession of the property on the first day of September of the year the assessment is made shall be liable for taxes thereon, but, as between themselves, it shall be the duty of the holder of the equitable title to list the property and pay the taxes thereon, whether the property be in possession or not at the time of the payment, etc."

Construing this statute, this court held, in the case of Bond v. Brand's Trustee, &c., 115 Ky. 634, that the purchaser of real estate at a decretal sale, made before the period for assessing the property for taxation, and where the report of the sale was not filed until thereafter, and

its confirmation did not occur until after the assessing period, and possession was not given until after the period for assessment, nevertheless the purchaser became the equitable owner of the property upon the date of his bid, and the execution of his bond for the purchase money, and the property was properly assessed against him at the assessing period, which intervened between his bid and the confirmation of the sale and delivery of the possession.

In Hughes v. McCreary, 27 R. 666, McCreary sold to Hughes a tract of land in July, 1902, and the transaction was evidenced by a writing, which stated the amount of money to be paid for the land, the time when it was to be paid, and when the deed was to be made and the possession of the land delivered. The first payment of the purchase money was to be made on March 1st, after the making of the contract, and notes were then to be executed for the balance of the purchase price, and the deed was then to be executed and delivered, and possession given of the property. It was held, that being the equitable owner of the land from the date of the contract, it was the duty of Hughes to list the land for taxation at the assessing period following the making of the contract, and to pay the taxes thereon. The court, in that case, said:

"By the terms of the section (section 4023, *supra*), the holder of the equitable title should list the property and pay the taxes thereon. On the 15th of September (the then assessing period) the legal title to the property was in the appellee, S. C. McCreary, and the equitable title was in Hughes. In equity he had the right to compel the appellee to convey the property to him by a compliance upon his part with the terms of the sale. Hughes did not have the legal title to the property, and the effect of the transaction was to vest him with the equitable title thereto. It is our opinion that Hughes held the equitable title to the property, and he should have listed it for taxation and paid the taxes thereon."

In the light of the plain terms of the statute, and the decisions of this court, *supra*, it does not seem that there could be any doubt of the liability of the appellee, Starks, for the taxes upon the property for the years sued for, but the contention is made, that at each of the assessing periods for taxation, for the years sued for, Starks was not in the possession of the property, but that it was in

the possession of the First Christian Church at said times, and was "a place actually used for religious worship," and hence was exempt from taxation for state and county purposes, under the provisions of section 170, of the constitution, and section 4026, Ky. Statutes. It will be observed, that in accordance with section 4023, *supra,* and Hughes v. McCreary, &c., *supra,* and Bond v. Brand, Trustee, *supra,* the possession of the property is not a controlling factor in determining the liability of an equitable owner of property for the taxes thereon. The statute, in fact, expressly provides, that the equitable owner shall pay the taxes, whether the property be in possession or not.  However, in City of Louisville v. Werne, 25 R. 2196, this court held, that it was the use of the property, and not the ownership, which determined, under section 170, of the constitution, whether or not it was exempt from taxation.  By section 170, *supra,* among other things, the following property is exempt from taxation:

"Places actually used for religious worship with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities and towns, and not exceeding two acres in the country."

In City of Louisville v. Werne, *supra,* Werne was the owner of a lot, which he had leased to a church for a period of twenty years, free from the payment of rents for its use, to be used as a place for religious worship. The church used it as a "place actually used for religious worship." Werne nor anyone else received anything for its use, in the way of rent or any gain. It was attempted to make him liable for the taxes upon it. It was held, that as its use was for religious worship, alone, it was exempt from taxation. The court, in the case, *supra,* said:

"It is the use of the property and not the ownership which determines the question of exemption. To hold that the congregation must be the absolute owner of the property used exclusively for religious worship, in order to create the exemption, would be to inject words into the constitution and to narrow the exemption which it expressly makes  *  *  *  It is shown that Werne gets no rent from the property, and it is therefore not held for corporate or private profit nor used nor employed for gain by any person or corporation."

The foregoing opinion is fully concurred in, but in the language of the opinion, if the property had not been used "exclusively" for religious worship, or if Werne had received rent for it, would it have been exempt from taxation, within the letter or spirit of the constitution? If property, which is owned by an individual, and which is "a place actually used for religious worship" one day in the week, and the remaining six days should be used by the owner in a gainful occupation, would it be exempt from taxation? If property is owned by a religious sect, or for that matter owned by anyone, and is actually used for religious worship, and no one receives any rent or compensation for its use, and no one gets any gain or profit for its use, there is no doubt of its being exempt from taxation, but a reference to the provisions of section 170, *supra,* in which are set out the different properties which are exempt from taxation, it will be found that there runs through it a purpose not to exempt from taxation any property which is employed or used for gain, by any person or corporation, except the household goods of persons with families, and crops produced in the year of the assessment and in the hands of the producer.

No one would seriously insist that the constitutional exemption from taxation would apply to property which the owner uses to let to rent to a religious body, to be used for religious worship, and the mere statement of such a proposition is sufficient to show that the constitutional provision has no application to such a state of case, and that such was not in the contemplation of the makers of the constitution. So, it seems that if appellee, Starks, employed or used the property purchased by him for gain, by entering into such an arrangement with the trustees of the First Christian Church, that he was remunerated by the church for its use of the property for religious worship, the use he made of the property was one by which he received compensation for its use, and the use to which he put it was not for religious worship. When one lets his property for rent, the use, which he is making of it, as the owner cannot be said to be a use for religious worship. The contract by which he purchased the property provided, that the church should remain in possession and use it for a place of religious worship until a new church, to be erected by it, should be ready for occupancy, but it, also, provided that the price to

be paid for the property should be $350,000.00; that $100,000.00 of this amount should be paid at once, and the remainder was to be paid in sums of $5,000.00 and multiplies thereof, upon demand, as it might be needed in the erection of the new church. Upon the first $100,000.00 to be paid, at once, the church was to pay Starks three per centum per annum from the date of its payment until the final settlement, when the new church could be occupied, and the property delivered, and five per centum per annum was to be paid upon all the other sums paid before the final settlement, up to the time of such settlement. At such settlement, Starks was, also, to be credited by the usual real estate agent's commission for making a sale of real estate. At the settlement made on October 16th, 1911, the three per centum per annum on the $100,000.00, and the five per centum per annum on the other sums paid before that time amounted to the sum of $11,332.31, and the amount credited for the usual real estate agent's commission was $7,125.00, making in all the sum of $18,457.34, by which Starks received credit upon the contract price. He says that he considered that he was only giving $342,875.00 for the property, which was the contract price less $7,125.00, the amount of the usual agent's commission. However, the proof shows that the church was refusing to consider any price for the property less than $350,000.00, and that was the agreed price stated in the contract. It is difficult to conclude that the sum by which he was given credit was for any other purpose than to compensate him for the use of the property while the church remained in possession of it, since the sums paid by him were not loans, but each of them was due and owing by him to the church, at the time they were paid, and his obligation to the church to pay the purchase price did not bear interest. It therefore appears that the circuit and county courts were in error in sustaining the demurrer to the statement of appellant.

The proceedings in the county court against the First Christian Church to assess the value of the contract between the appellees for the sale of the church buildings and grounds, for taxation, as against the church, resulted in a judgment of the county court to the effect, that the contract was property subject to taxation, and that the value of it on September 1st, 1909, was $210,-745.98, and on September 1st, 1910, its value was

$220,576.04, and adjudged that the church be assessed with said sums for taxation as of those dates, respectively. The circuit court, upon appeal, reversed the judgment of the county court and dismissed the statement of appellant, and it has appealed.

The contention on the part of appellant is, that the contract is property; that all property is taxable, which is not exempt therefrom by reason of section 170, of the constitution; and that the contract is not exempt under the provisions of that instrument.

The contention of appellee, First Christian Church is, that the contract is for the sale of a place actually used for religious worship, and being then used for religious worship, and is, therefore, exempt from taxation; that out of the first $100,000.00 paid upon the contract, it had purchased a site for the new church building, which it mentioned in the contract as being in contemplation, and had, at the time of the filing of its answer, been engaged about one year in erecting the new church building to be used by it as a place of religious worship, but which was then not completed, and that the new place it was preparing for worship had been assessed for taxation as of September 1st, 1909, and September 1st, 1910, and it had fully paid the taxes thereon; that the property covered by the contract was, at the time of the sale, worth only $325,000.00 and that the consideration received by Starks, for execution of the contract being worth only $325,000.00, and he having agreed to pay $350,000.00 therefor, and that the church building and grounds being exempt from taxation, that the contract was worth only $18,000.00 to the church; that the church property, for the sale of which the contract was made, being exempt from taxation, it was as if taxes had been paid thereon, and a taxation of the contract would, therefore, be double taxation; that the contract was really not property subject to taxation. That the contract was valuable property, and that property of such kind is ordinarily subject to taxation, there is no doubt. It was the obligation of a solvent man, secured by a lien upon the property to pay the church the sum of $350,000.00—$100,000.00 of which was immediately due and the remainder was due upon demand. It was an obligation which was capable of enforcement by legal proceedings, if necessary.

In Com., etc., v. Ky. W. & D. Co., 143 Ky. 323, this court said:

"Any existing, enforceable, collectible demand that one person has against another or against property upon which it is a lien, or out of which it can be collected, is property."

The same doctrine was held in Gish v. Shaver, 140 Ky. 657.

Exemption from taxation is a privilege which does not follow property when it is sold and goes into the hands of persons or is applied to uses, for whom or for which no constitutional provision provides for it an exemption from taxation. The contention that the property being exempt from taxation, that its state would be the same as if the taxes had been paid upon it, and that to tax the obligation given for the sale price of it would therefore be double taxation, does not seem to be meritorious. It is not different from the every-day transactions, where an individual purchases property and gives his note for it, and thereafter the property is liable for taxation in his hands, and his obligation for the price of it is liable for taxation in the hands of the holder.

It can only be inferred from the terms of the contract that the sums of money which Starks paid in settlement of the purchase price of the property sold him was used by the church authorities in the purchase of a lot and the erection thereon of another place to be actually used for religious worship. The answer alleges, only, that out of the first $100,000.00, paid on the contract, that a lot was purchased for the erection of a place of worship, and that the church had been engaged in the erection of the buildings upon it for that purpose during a year before the filing of the answer, and that the building had not yet been completed. The averment that the church had been assessed for taxation with the value of the proposed new place of worship for the years 1910 and 1911, and had paid the taxes thereon, is denied by the reply, and there is no proof in the record to support the averment. This, however, does not seem to be a material question for consideration, as the county court did not assess, as against the church, for taxation, the value of any portion of the obligation which had already been paid to the church, at either of the two assessing periods.

The exemption of property from taxation, which is owned by religious societies, and provided for by sec-

tion 170, of the constitution, in addition to the exemption heretofore quoted, is the following:

"All parsonages or residences owned by any religious society and occupied as a home, and for no other purpose, by the minister of any religion, not exceeding one-half acre of ground in towns and cities, and two acres of ground in the country, appurtenant thereto."

Thus, it appears that the property owned by religious societies, selected by the constitution makers, to be exempt from taxation, consists of only two items: (1) Places actually used for religious worship, etc.; and (2) parsonages occupied as a home by the minister, etc.    While it is true that the property owned by religious societies, and which is exempt from taxation, must not be confounded with that of institutions of "purely public charity," as it has been held by this court that the property of a church is not included within the exemption allowed for institutions of "purely public charity," and while it was held by this court, in Com. v. Thomas, Trustee, 26 R. 1128; Broadway Christian Church v. Com., 66 S. W. 32; and Calvary Baptist Church v. Milliken, 148 Ky. 580, that the only property of a religious society, which is exempt from taxation, is the two kinds mentioned in section 170, *supra*, yet the precise question in this case has never been determined by this court, and the construction to be placed upon the provision as applied to the facts of this case should be one supported by the light of reason, and not one, which would lead to a defeat of the purpose for which the constitutional provision was adopted.

The contract between the appellees, and the proof shows that the property which was sold to Starks by the First Christian Church had theretofore been exempt from taxation as "a place actually used for religious worship." While there is no merit in the contention that the proceeds of the sale of the property, which is exempt from taxation, is, on that account, exempt when it is sold and the proceeds held or applied to other purposes, but it is a matter of common knowledge, that religious bodies, seeking to establish places for religious worship, are obliged to secure funds for the purpose of purchasing the grounds and erecting the necessary buildings thereon, and that the negotiations necessary for the consummation of such a project require time for their doing. The evident purpose of the constitution makers was to ex-

empt "places actually used for religious worship," and it does not appear to be consistent with the letter or spirit of section 170, *supra*, to impose taxes upon funds, which have been donated or otherwise secured by the members of a religious sect or which holds obligations to be paid same with the present, in good faith, purpose to presently purchase the necessary grounds and erect the necessary buildings thereon for the purposes of religious worship, and in pursuance of such intention are presently applied to such purpose. To hold that such funds are liable for taxation would be to rest the constitutional exemption upon a very narrow and inconsistent basis.

In City of Louisville v. Werne, 25 R. 2196, Werne leased his lot to the Walnut Street Baptist Church to be used for a place of religious worship, on March 31st, 1890. The lot had no building upon it, but the trustees of the church took possession of the lot in May or June, 1891, and moved a house upon it and began holding services in it. An attempt was made to subject it to taxation for the year 1891, the assessing period for the year 1891 being September, 1890, at which time there was no building on the lot, and it was not actually used for religious worship until August, 1891. This was before the adoption of the present constitution, and the statute upon the subject of exemptions from taxation exempted "public schools, churches, and all property of seminaries, asylums, hospitals, infirmaries, colleges, and all other funds devoted to charitable purposes and church parsonages, * * * provided that nothing herein shall be construed as exempting any property which is used or employed for the gain of any person." In that case the court held that the word "funds," as used in the statute, was used in the sense of capital, and held, that, although the lot did not have a church upon it at the assessing period of September 1st, 1890, the lot being at that time in the hands of the trustees of the church and under their control and with no right to use it for any other purpose, except for a church, that it was exempt from taxation under that statute.

In Com. By etc. v. Gray's Trustee, 115 Ky. 665, this court, in construing that portion of section 170, of the constitution, which exempts "institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the

cause of education," held that the word "institution," as there used, was not simply a building or a plant or a body corporate, but it was that which might be set up, provided, ordained, established, or set apart for a particular end, and that a devise in a will, which set apart sums of money and the income of it to be used exclusively, for the education of four indigent children, was an "institution" within the meaning of the constitutional provision, without regard to the particlar form of its investment.

In the instant case, the fact that the contract sought to be taxed was an obligation for the price of exempted property does not seem to be material. The proceeds of the sale of the exempted church property were set apart by the church by the contract, for the present purpose of securing the necessary lot and erecting the necessary buildings thereon to make "a place actually used for religious worship."

In Com. v. Sinking Fund Commissioners of Lebanon Water Works, 112 S. W. 1128, there was a sinking fund in the hands of the commissioners for the purpose of liquidating bonds which were issued to purchase the water works. The water works, under section 170, of the constitution, were exempt from taxation, as public property. The sinking fund commissioners invested the fund in their hands, which was to be held and used for the purpose of liquidating the bonds, in taxable bonds, and this court held that the fund, nor the bonds in which it was invested, could be lawfully taxed.

Applying the principles of these cases to the facts of the instant case, the spirit and meaning of section 170, *supra*, would exempt from taxation funds held by a church for the present, in good faith, purpose of securing for itself a place actually to be used for religious worship, and which are presently invested in such property. In the instant case, the obligation of Starks was for the payment to the church of the price of the property, which was exempt from taxation, the sale was made for the purpose at once of securing a more desirable place for religious worship with the proceeds of such sale. When a new place of actual religious worship was secured, and the funds arising from the sale invested therein, it would, without question, be exempt from taxation. To the extent that the proceeds of the obligation of Starks was invested in another place of religious worship, it was

simply the changing of the proceeds of the sale from one piece of exempted property to another, and a reasonable construction of the constitutional provisions, *supra,* would not render such proceeds liable for taxation, because the, assessing period should catch the funds designed to provide a place of religious worship between the exempted piece of property, out of which they came, and the one into which they are to be presently invested. Such funds are the representative of a "place actually used for religious worship," and without such funds, the religious body could not acquire a place for worship. To tax such funds would defeat the purpose of the exemption. If the church made use of any of the funds, for which it sold its church building and grounds, for any purpose, other than providing it with another place of religious worship, such funds were liable for taxation for the year, at the assessing period of which the church had such funds on hand or held such obligation for them.

Neither the judgment of the county nor the circuit court is in accord with the views herein expressed. The county court was in error in holding that the entire value of the contract was taxable, at each of the assessing periods at which it was sought to be assessed, and the circuit court in holding that no part of the value of the contract was assessable, without any proof as to whether the proceeds of the obligation were invested in another place for religious worship, or were otherwise used by the church, or still held by it.

For the reasons indicated the judgment in each of the causes is reversed, and they are remanded for proceedings consistent with this opinion.

The whole court sitting, Chief Justice Miller dissenting.