**CITY OF ASHLAND, a Municipal Corpora-
tion of the Second Class, Appellant,**

v.

**CALVARY PROTESTANT EPISCOPAL
CHURCH OF ASHLAND, Kentucky,
et al., Appellee.**

Court of Appeals of Kentucky.

March 4, 1955.

Rehearing Denied May 27, 1955.

A. W. Mann, Arthur T. Bryson, Jr., Ashland, for appellant.

John L. Smith, Catlettsburg, J. G. M. Robinson, Ashland, for appellee.

MOREMEN, Justice.

This is an appeal from a judgment in a declaratory judgment suit upholding the contention of appellee, Calvary Protestant Episcopal Church of Ashland, Kentucky, that certain property owned by it is exempt from taxation under Section 170 of the Constitution.

The church has, for many years, owned a corner lot in Ashland upon which stands its church building. It purchased an adjoining lot upon which is a two-story building. The lower floor was rented by appellee to a merchant for a term of 26 months. The acquired building and church proper were joined, after purchase, by means of a stairway leading from the church to the upper floor of the other building which is being used in connection with a Sunday school and other religious activities. The petition alleges that the sole purpose for the purchase of the adjoining property was efficiently to carry on its religious activities, the old property having become inadequate. It is also alleged that all the rental proceeds, save only such as were to be used for maintenance, were set aside for the pur-

pose of retiring a lien on the lot for the balance of the purchase money. It is alleged that the purchased lot is attached and appurtenant to its house of worship and the two items do not exceed one half acre in area.

The trial court held appellee's recently acquired property to be exempt from taxation even though the first floor of the building was leased to a mercantile firm, and placed emphasis on the fact that the rents derived from the lease were applied to the retirement of the lien debt on the building and once the debt was retired, the whole building was to be devoted to religious purposes. The appellant, City of Ashland, sought to tax only that portion of the building under lease—the first floor. We think a different result must be reached in light of the judicial history construing Section 170 of our Constitution, which exempts certain types of property and certain institutions from taxation.

Our constitutional exemption found in Section 170 reads in part:

"There shall be exempt from taxation * * * places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country; * * * all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto * * *."

In the determination of the application of this section we have made "use," rather than the bare fact of ownership, the controlling factor. Ham Evangelistic Ass'n v. Matthews, 300 Ky. 402, 189 S.W.2d 524, 168 A.L.R. 1216. Thus, if appellee's property is to come within the exemption, it must come within the test of being used for religious worship without regard to the fact that it is owned by a church.

In reaching a decision we find it necessary to review some of the many cases construing Section 170 which concerns not only property used for religious worship, but also charitable and educational institutions, and attempt to glean the underlying policies favoring exemption for some and nonexemption for others.

Insofar as charitable or educational institutions are involved, it was held as early as 1896, in the case of Trustees of Kentucky Female Orphan School v. City of Louisville, 100 Ky. 470, 36 S.W. 921, 40 L.R.A. 119, that all of the property of a public charity or an educational institution should be exempt because the Constitution exempts the "institution" as such and all its property in whatever form. There the Midway School owned property in Louisville, the rentals from which were used and devoted to its school in Midway.

In the recent case of City of Louisville v. Presbyterian Orphans Home Society, 299 Ky. 566, 186 S.W.2d 194, this court was faced with the question (now before it as applicable to a church and religious use) of the exemption of property owned by educational and charitable institutions which was rented or leased, the income from which was applied to educational purposes. Judge Rees, in an elaborate opinion, traced the judicial history of the exemption accorded charities and educational institutions under Section 170 from the date of the Female Orphan School case cited above and in so doing summarized and catalogued several cases to which we need not refer because they are set out in that opinion. After stating that the charitable and educational institutions relieved the state and municipalities of burdens which they would otherwise have to assume, it was said in 186 S.W.2d at page 199:

"* * * The income derived from their endowments, whether in the form of real estate or other investments, is as necessary to the functioning of charitable and educational institutions as are the grounds and buildings actually used in their activities. If the framers of the Constitution intended to alter

the liberal policy long favored in this state by exempting only a *portion of the property* of such institutions, they surely would have said so in plain and unmistakable language. *It is significant that when they dealt with religious societies they were specific and limited the exemptions to 'places actually used for religious worship,* with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country,' and 'all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto.' There was a practical reason for the distinction. *Religious societies, unlike charitable and educational institutions, do not perform any function which relieves the taxpayers of a portion of their burden.* Furthermore, history informed them of the mischievous consequence of the acquisition and holding of great wealth, especially in the form of land, by churches and religious societies. Soon after the adoption of the Constitution the General Assembly went even further and passed a statute of mortmain, which prohibited churches and religious societies from taking or holding title to real estate in excess of fifty acres. Chapter 200, section 3, Acts of 1893; KRS 273.090. Like abuses had not appeared as the result of the ownership of real estate by charitable and educational institutions." (Emphasis added.)

This statement is indicative of the limited area of application for the exemption of property "actually used for religious worship" and clearly points out that the policy underlying the religious exemption is not the same as that underlying the charitable and educational institutions' exemption. Although current policy may differ from that of another time, the intent of the framers of the Constitution and of the people adopting it must be given effect. Rouse v. Johnson, 234 Ky. 473, 28 S.W.2d 745, 70 A.L.R. 1077.

From the foregoing, it necessarily follows that if property actually used for religious worship is to be exempt, it must come under the specific exemption granted such property and is in nowise supported by the policy underlying the more liberal exemption accorded charitable and educational institutions.

In addition to the limited exemption found in Section 170, we find comment, which borders on precaution, elsewhere in our Constitution that serves to guide us when dealing with the taxation of property owned by a church. Section 5 of our present Constitution, among other things, prohibits the giving of a preference to any religious sect or ecclesiastical system and provides that no person shall be compelled to contribute to the erection of a place of worship. Section 189 provides that no fund nor tax raised or levied for educational purposes shall be appropriated to, or used by, or in aid of, any church, sectarian or denominational school.

The close relationship between Church and State existing in most of the American colonies was responsible for the origin of the religious property exemption. Today, constitutional or statutory provision for such exemption exists in every state, including the District of Columbia. Decisions in the other jurisdictions turn on the difference in the wording of the exempting statute or constitutional provision. The general rule, however, is that the exemption is to be construed strictly and the use to which the property is put is the test without regard to its ownership. We refrain from analyzing the cases from other jurisdictions but call attention for the benefit of those interested to the Note in 49 Col.L.Rev. 968, where the constitutionality of tax benefits accorded religious property is dealt with at length. Also see 64 Harv.Law R. 288; 2 A.L.R. 545; 17 A.L.R. 1027; First Bap-

tist Church of Pittsburgh v. City of Pittsburgh, 341 Pa. 568, 20 A.2d 209, 134 A.L.R. 1176; 168 A.L.R. 1222.

With these underlying thoughts in mind, we now turn to appellee's claim to exemption because the rents from the store will be used to retire the debt and, after retirement of the indebtedness, the building will be devoted to religious worship, in the light of cases heretofore decided construing Section 170 as it applies to property "actually used for religious worship".

In Broadway Christian Church v. Commonwealth, 112 Ky. 448, 66 S.W. 32, we held that a parsonage owned by a church, not occupied by its minister but under lease to another, was not exempt from taxation. A contention was made in that case that the property was used for religious worship. It was said by the court that the use and not the ownership controls and that if a business house is erected on the church lot and rented out, it would not be exempt.

In Commonwealth v. Y.M.C.A., 116 Ky. 711, 76 S.W. 522, it was contended that a part of the property of the Y.M.C.A. was used for religious worship within the meaning of Section 170 and we wrote in granting the exemption, 76 S.W. at page 523:

"* * * But if the society owns other property, not actually used as a place for religious worship, or if it owns property so used, but in excess of the quantity exempted by that clause of the Constitution which has been quoted, or if some part of its buildings is used distinctly for other purposes, such excess would be liable to taxation as other property, without regard to its ownership * * *."

The same contention was made in City of Louisville v. Werne, 80 S.W. 224, 25 Ky.Law Rep. 2196, where a portion of the lot occupied by the church was not, according to the tax assessor, used by the church. We held that portion of the church yard exempt from taxation as being "appurtenant" to the house of worship.

In Commonwealth v. Thomas, 119 Ky. 208, 83 S.W. 572, 6 L.R.A.,N.S., 320, we held a trust fund devoted to the propagation of the principles of primitive Christianity, as taught by the church, not exempt from taxation on the contention that it was church property. In that case, Judge Barker, considering Sections 5, 170 and 189 of our Constitution in pari materia, said in 83 S.W. at page 573:

"It does not require profound reflection to reach the conclusion that whatever deficit there is in the fiscal budget due the state for any given year by reason of exemptions of property which would otherwise be required to contribute to the common weal is cast as an additional burden upon the other taxpayers; and it results, therefore, that every exemption is indirectly an additional tax upon the property owners not enjoying a like benefaction."

We were next faced with the problem in Calvary Baptist Church v. Milliken, 148 Ky. 580, 147 S.W. 12, the facts of which are very similar (if not identical) to those of the case at bar. There the church purchased a lot and building adjoining its church with the purpose to tear it down to preserve the "light and air" for its church property. To help retire the debt, the church rented out the property and applied the rentals to the purchase price. We held the property subject to taxation, saying it did not fall within either of the grounds of exemption granted religious property by our Constitution—that is, property actually used for religious worship or parsonages or residences owned by a religious society and occupied by its minister.

In 1916, we were faced in Commonwealth v. First Christian Church of Louisville, 169 Ky. 410, 183 S.W. 943, 949, with the problem of whether funds derived by a church from the sale of its old lot and church building were taxable. We held that the funds in the hands of the church, which were held for the avowed purpose of erecting a new church, were not taxable merely because the church was caught during the assessing period with the funds in its hands and declared the funds represented property " 'actually used for religious worship' ".

The appellee relies mainly on the First Christian Church case and the Werne case, cited above, as upholding its contentions. As previously noted, the Werne case declared that the property appurtenant to a house of worship and used by the congregation was not taxable. While it is true that the property sought to be taxed in the case at bar is appurtenant to the existing church building, it is not *used* by the congregation. Rather, the first floor, the portion sought to be taxed, is rented out, in competition with other property owners, to a mercantile firm. In other words, a part "of its buildings is used distinctly for other purposes" than religious worship.

The appellee lays stress on the First Christian Church case and says that the taxation of its building would be equivalent to a taxation of the funds in its hands that are devoted to religious purposes. With this we do not agree. In that case the tax sought to be imposed was on funds and the funds held to be exempt were derived from the sale of property previously exempt (the old church edifice) and insofar as they were to be used to acquire a new place of worship, they should be exempt. Here, the tax sought to be imposed is an ad valorem tax upon additional real property purchased by the appellee church—the first floor of which is rented out and the rentals therefrom applied to the retirement of the lien debt.

We have consistently said that in determining whether property is "actually used for religious worship," the use to which the property is put, rather than its ownership, is the controlling feature. The rental income is an incident of ownership and if the ownership is not controlling in according the property an exempt class, it necessarily follows that the rental income, which is but an incident thereof, in no way controls.

It is further asserted that once the lien debt on the additional property is retired, the whole of the building will be devoted to or used for religious worship. In other words, it is asserted that the prospective use of the property serves to create, or aids in creating, an exemption under Section 170. But attention is called to the Constitution itself, where no mention is made of "prospective use." Rather, it exempts property "actually used" for religious worship. As was said in the Broadway Christian Church case [112 Ky. 448, 66 S.W. 33], "When the framers of the constitution undertook to define in exact terms what should be exempt, we are not at liberty to add to the terms which they selected with so much care and precision. * * * and, if we depart from the narrow limits of exemption which they have set, we in so far destroy that equality of taxation which they so laboriously aimed to attain."

It runs throughout the cases discussed above that the exemption accorded property used for religious purposes under Section 170 of our Constitution is to be construed strictly; whereas, the exemption accorded charitable and educational institutions construed liberally. The policy behind the latter classification was explained in the Presbyterian Orphans Home Society case, above discussed, and the limitation on the exemption of church property properly defined.

Were we to accord the appellee's property an exemption in this case, we would find little support by logic, reason or precedent and would establish a rule as broad and liberal as that accorded property owned by charitable and educational institutions. Too, we would find ourselves in the anomalous position of granting the church an indirect subsidy which we are prohibited by our Constitution from doing directly.

Therefore the judgment is reversed with directions to enter judgment in accordance with this opinion.