Donald J. Lunny City Attorney Plantation
QUESTION:
Does a so-called Society of Universal Love Church `consulate' or `rectory' fall within the exemption from municipal public service taxes provided by s. 166.231(4), F. S., which requires the exemption of `purchases by any recognized church in this state for use exclusively for church purchases'?
SUMMARY:
Application of the exemption from the municipal public service tax pursuant to s. 166.231(4), F. S., is dependent upon a determination by the taxing authority as to whether the purchases of the specified taxable items are by a recognized or publicly known church and are for use exclusively for church purposes,i.e., apart from all other uses or purposes. Church purposes ordinarily are those services and functions usually carried on by churches generally, such as preaching, teaching, Bible and Sunday schools, prayer services, and meditation. Each claimed exemption must be determined on its own merits based upon clear evidence furnished by the church seeking the exemption which bears the burden of establishing its right to the exemption with any doubt resolved against the claimant.
According to your letter and accompanying material, the Society of Universal Love, Inc., a nonprofit corporation, was incorporated in Florida on April 13, 1970 (certificate of incorporation amended on January 11, 1971). The `consul' of the society has in the past maintained and now maintains that the society is a church and has maintained its `consulate' in the state at some eight individual locations in the counties of Brevard, Broward, and Palm Beach over the past 7 years, each of such locations being apparently an apartment or condominium and the residence of the `consul' at the time. The present `consulate' is a fourth-floor rental apartment in a seven-story residential apartment building. Apparently, the `consul' of the society is or claims to be a duly ordained, full-time minister in the service of the society and its religious teachings. Your letter refers to the `consulate' as a `rectory' or a `parsonage' and the enclosed correspondence from the society mentions ordained ministers living at the `consulate.' The society's consul asserts that the consulate or parsonage is staffed by two duly ordained, full-time ministers who `in the performance of their exclusive service to our Father-God and his Society of Universal Love . . . also ate and slept at the Consulate.'
I am not advised as to the membership of the society, either as to the nature or extent of any such membership, or the nature or extent of its communicants or followers of its religious beliefs and faith. I am further not advised as to the tenets of the organization or the nature, extent, or frequency of any religious meetings, services, or other religious ceremonies or rituals conducted, held, or observed at the `consulate' or `parsonage' or `rectory' by the `consul' or the ordained staff ministers or by the communicants or followers of the society and its faith or teachings. Indeed, it appears that the society does not own any church building or parsonage or rectory but rather it or its `consul' rents the residential apartment, denominated a `consulate' or `rectory' in which `two duly ordained and full-time' ministers live. It appears from the enclosed material that the society's consul has on one occasion represented to a county board of tax adjustment that, `[a] Church is people, it's not a building. . . . We meet at the Consulate and in the homes of our members.' Finally, I am not advised as to whether the Society of Universal Love, Inc., a Florida nonprofit corporation, is recognized or publicly known in your community or in Florida as a church, nor have I been furnished any evidence or documentation concerning the ordination of the `consul' or his `staff ministers.'
In light of the above, resolution of this matter requires discussion of certain general principles of taxation necessarily applicable to this matter. First, exemptions from taxation are to be strictly construed against the claimant and in favor of the taxing power. State ex rel. Wedgeworth Farms, Inc. v. Thompson,101 So.2d 381 (Fla. 1958) and State ex rel. Szabo Food Services, Inc. v. Dickinson, 286 So.2d 529 (Fla. 1973). The person seeking the exemption bears the burden of establishing by clear evidence and law that he falls within the terms of the exemptive provision, with all doubt resolved against the existence of the exemption. United States Gypsum Co. v. Green, 110 So.2d 409 (Fla. 1959), and State ex rel. Szabo Food Services, Inc. v. Dickinson, supra. Previous opinions on subject matter similar to the case sub judice
have followed this strict-construction rule and have allowed exemptions for Sunday school services, vacation Bible schools, and church day schools (AGO 076-42); have denied them to church purchases for schools, clinics, and playgrounds (AGO 075-209); and allowed the exemption under certain conditions for parsonages and convent buildings (AGO 057-255). The distinction between the opinions in AGO's 075-209 and 057-255 lies in whether or not the activity is a direct adjunct to the church or its congregation. Finally, each application for an exemption must be determined on its own essential and peculiar factual circumstances and the controlling law applicable thereto. Fleischer Studios v. Paxson,2 So.2d 293 (Fla. 1941).
In light of the above principles, the determination of entitlement to the claimed exemption must be made by the municipal officers charged with the responsibility and may not be made by this office. This response therefore must necessarily be couched in general terms which set forth the general definitions and principles of law applicable to churches and church purposes.
The requested exemption found in s. 166.231(4), F. S., provides:
 A municipality . . . shall exempt purchases by any recognized church in this state for use exclusively for church purposes.
The purchases taxed by s. 166.231(1) include the purchase within the municipality of electricity, metered or bottled gas, water service, telephone service, telegraph service, and cable television service.
The exemption in effect requires that two conditions be met, each of which will be individually examined. First, the purchase must be made by a `recognized church in this state.' Second, such purchase must be `use[d] exclusively for church purposes.'
The noun `church' as used in the statute under consideration has been defined for various purposes as:
 A body or community of Christians, united under one form of government by the profession of the same faith, and the observance of the same ritual and ceremonies.
 [A]n organization for religious purposes, for the public worship of God.
 The term may denote either a society of persons who, professing Christianity, hold certain doctrines or observances which differentiate them from other like groups, and who use a common discipline, or the building in which such persons habitually assemble for public worship. [First Independent Missionary Baptist Church of Chosen v. McMillian, 153 So.2d 337, 342 (2 D.C.A. Fla., 1963).]
See also Abenkay Realty Corp. v. Dade County, 185 So.2d 777, 781
(3 D.C.A. Fla., 1966), and 14 C.J.S. pp. 1116 and 1117. Cf. Shipbaugh v. City of Sarasota, 94 So.2d 728, 729.
Contrasting to this is the phrase `church facility' which has been described as:
 . . . a thing devoted primarily to religious or church purposes and not something used primarily for residential purposes . . . . [Abenkay Realty Corp. v. Dade County, supra, at 781.]
Thus (in the context of s. 166.231(4), F.S.), purchase must be for the use of the communicants or members of the society (the congregation), or the church premises itself, and be directly and exclusively connected with or in furtherance of the objectives of the particular faith.
Additionally, consideration must be given to the modifying word `recognized.' The generally accepted definition of this verb form is `publicly known.' Black's Law Dictionary 1436 (4th Ed.); 36AWords and Phrases 14. Cf. Shipbaugh v. City of Sarasota, supra, and AGO 057-229.
It is also important to consider the meaning of the words `rectory' and `parsonage' as they relate to the factual situation and statute under consideration. Black's Law Dictionary 1441 (4th Ed. 1968) defines `rectory' as `an entire parish church' and `a rector's manor, or parsonage house.' It further defines `rector' as `[t]he spiritual head and presiding officer of [a] church.' The word `parsonage' has a similar meaning and is more accurately stated as a term `more generally used for the house set apart for the residence of the minister.' Black's Law Dictionary 1273 (4th Ed. 1968).
It would appear from the facts presented in your letter that the predominant use of the apartment is as a residence for the `consul.' Assuming that a `consul' enjoys the same rights as a `rector' or `parson' and has the same responsibilities, then it follows that a consul's residence provided for such use by the congregation or members of the society would be defined in the same way as parsonage or rectory.
It must then be determined if such a residence is exempted under s. 166.231(4), F.S. The Supreme Court has stated (in a case dealing with a city ordinance prohibiting sale of liquor within 500 feet of `church facilities') that a `church facility' means:
 . . . a thing devoted primarily to religious or church purposes and not something used primarily for residential
purposes. [Shipbaugh v. City of Sarasota, 94 So.2d 728, 729
(Fla. 1957); emphasis supplied.]
The facts in this case are analogous to the factual situation in your question. In both situations the premises were or alleged to be owned or rented by the church, were used for some church meetings (other residences were also used as in this case), and members of the congregation could meet with the pastor there. In holding that the parsonage was not a church facility the court said at 729:
 The primary purpose of a parsonage is secular . . . it is not designed or intended as a place of worship. Actually, except for the goodness of its occupant, it is no different from any other home.
It should be noted, however, that in Shipbaugh no church services and no Sunday school or religious classes were held in the residence. It is also to be noted that Shipbaugh did not deal with a taxation issue, but it would appear from the court's discussion that a parsonage may not be a church facility in all situations.
In my predecessor's opinion, AGO 057-255, dealing with the exemption from utility taxes on parsonages, it is stated that `any building intended to be used primarily for purposes connected with the faith of such religious organization may be said to be used for church purposes.' The exemption is further discussed in that opinion in situations where a parsonage was
 used as a part of the church . . . [and] . . . furnished the pastor or pastors of the church without cost of any nature including utility services . . . [it] . . . would seem to be an adjunct of the church . . . however, if the occupant of the parsonage is required to furnish his own utilities we doubt that such utilities would be within the exemption. . . . (Emphasis supplied.)
The considerations in this opinion must be accorded weight in determining the applicability of the exemption to the facts in your letter.
Accordingly, the Society of Universal Love, Inc., must bear the burden of establishing that it is a `recognized church.' Even though it has received a nonprofit designation and a `religious organization' sales tax exemption, it may not be able to bring itself within the terms of s. 166.231(4), F.S., since the terms of the two statutes differ and they must be independently and separately interpreted and applied in any given case for the purposes of the particular statute. Further, it should be noted that the mere fact that it may be entitled to an ad valorem tax exemption under Ch. 196 is not determinative since the criteria for determining that exemption are also different than those under s. 166.231(4). Some factors which should be considered are: The nature and number of communicants or followers; whether the `services' conducted are open to the public; the place or places where the religious services or meetings are held and the frequency thereof; the sources of the moneys used to lease the residential apartment and pay the utilities and whether they are paid from the offerings or tithes of the congregation or from other sources; the free availability of the `consulate' facilities to the public for prayer, meditation, religious education, religious counseling, etc., on a daily basis; and documentation concerning the `duly ordained' status of the `consuls.'
Secondly, the Society of Universal Love, Inc., must establish that the property sought to be exempted is used, according to s.166.231(4), F.S., `exclusively for church purposes.' The term `exclusively' as used in the statute under consideration does not permit the consideration of `primary use or predominant use' as in other statutes; cf. s. 196.012(1) and (3). `Exclusively' is a word of limitation defined as meaning `apart from all others.' Lee v. Gulf Oil Corporation, 4 So.2d 868, 870 (Fla. 1941); Weiprecht v. Gill, 62 A.2d 253, 256 (Md. 1948); Kirby v. Columbian Institute,243 A.2d 853 (N.J. 1968).
The next phrase which must be considered in determining the applicability of the exemption is the term `church purposes.' In many tax statutes the term `church purposes' has been defined as those purposes related to the objectives of or the physical structure of a church. 84 C.J.S. Taxation s. 291 at 591. Most of these are, however, statutes relating to ad valorem taxation, and various statutory criteria and requirements differ, or the construction placed thereon in the several jurisdictions may differ. A more general definition in simple terms would be those purposes directly and exclusively connected with or in furtherance of the particular faith or its tenets and objectives.
It is a general rule that entitlement to the exemption in ad valorem tax cases is determined by use, not by the charter of the institution that owns or uses the property. It is only property held and used exclusively for `religious purposes' which may be exempt from property taxation. University Club v. Lanier,161 So. 78, 79 (Fla. 1935); Jefferson Standard Life Ins. Co. v. City of Wildwood, 160 So. 208 (Fla. 1935); Haines v. St. Petersburg Methodist Home, Inc., 173 So.2d 177 (2 D.C.A. Fla., 1965); City of Ashland v. Calvary Protestant Episcopal Church, 278 S.W.2d 708
(C.A. Ky. 1959); Evangelical Lutheran Synod of Missouri, Ohio and Other States v. Hoehn, 196 S.W.2d 134 (Mo. 1946); Berean Fundamental Church Council, Inc. v. Board of Equalization,183 N.W.2d 750 (Neb. 1971); House of Rest of the Presbyterian Church in the United States of America v. County of Los Angeles,312 P.2d 392, 393-394 (2 D.C.A. Calif., 1957), stating that the criteria to be applied to the term `exclusively for religious purposes' was as follows:
 Property used exclusively for religious purposes is exempt from taxation if:
1. The owner is not organized or operated for profit . . . .
 3. The property is used for the actual operation of the exempt activity . . . .
 4. The property is not used or operated by the owner or by any other person so as to benefit any officer . . . director . . . shareholder (or) member of the owner.
 5. The property is not used by the owner or members thereof . . . for social . . . purposes except where such use is clearly incidental to the primary religious purposes.
These cases, however, all deal with property taxation and the same rules may not necessarily be applied to excise or utility tax situations. Additionally, there must be a determination as to whether `religious purpose' is synonymous with `church purpose.' For the purposes of utility tax exemption it appears that the terms are not necessarily the same as the `religious purpose' spoken of in these ad valorem property tax cases. In the statute under consideration herein, real property or its use is not at issue. Here it is purchases of services by a church exclusivelyfor the congregation's or church's or faith's purposes.
In the case sub judice, the person claiming the exemption must show that the premises are used `exclusively for church purposes.' It must therefore be determined by the taxing authority whether the use of the apartment by the society or congregation or by its `consul' is `exclusively for church purposes' which ordinarily are those services and functions usually carried on by churches generally, such as preaching, teaching, prayer services, Bible and Sunday schools, and meditation.
Prepared by: William D. Townsend, Assistant Attorney General