Shaw, C. J.
This is a case in equity, which comes before the court upon the bill, answer, and replication, without any *9 proofs taken. "We can only therefore act upon the facts set forth in the bill, and expressly admitted by the answer. All those facts set forth in the bill, and denied in the answer, or not answered at all, must be considered as not proved.
The gravamen of the plaintiff’s complaint is, that, after the legislature had authorized the respondents by St. 1845 c. 246, § 2, to increase their capital stock by the creation of not more than 5,000 shares, they voted to act upon that, authority to the extent of creating 4,500 shares; that the corporation accepted this act, and voted to distribute the shares, so as to give one new share to each of the existing stock holders, for every four shares held by him; that the corporation passed a vote, authorizing each former stockholder to give notice of his intention to accept the offer, and take the shares on the 1st July, 1846; that by a subsequent vote of the directors, the time was extended to the 1st August, 1846; that the complainant had become proprietor, by assignment and transfer from actual stockholders, of their right to subscribe for the new stock, +o the amount of 146 shares of the new stock; and that, on the 1st August, by a notice in writing, he signified his desire to take that number of shares. In looking at the votes by which the corporation accepted the act authorizing them to issue new shares, it appears that they directed an offer of the new shares to be made to the former stockholders at par, that is, at $100 per share; but, at the same time, passed a vote, that each share should be chargeable with the payment of $100 in three instalments, one of which was to be paid at the time, fixed as the limit of the time, of subscribing. The authority given the corporation was to issue new stock, without directing how it should be distributed or disposed of; it was left to the corporation to sell it to new proprietors for the general benefit, or to distribute it proportionably amongst the existing proprietors. In either mode, it would enure equally to the benefit of all; but the right and power of determining it was a corporate right, to be used as the corporation might decide. When, therefore, they decided to offer it to the existing proprietors, they had a right to prescribe the terms. The respondents, the corporation, insist, that, having decided *10 to offer the shares in certain proportions to existing proprietors, and simultaneously passed a vote requiring one third part of the amount to be paid at the same time at which they should be allowed to subscribe for and take the stock; that such payment was a condition annexed to the offer; and, therefore, that the complainant’s mere offer to take, without making the payments, was no actual taking; that the respondents were not bound by this offer; and that there was no contract ■for the shares. The complainant, indeed, alleges in his bill that the corporation, by Tuekerman, their agent and treasurer, dispensed with such payment, as required by the vote of the directors, and agreed to give him a credit, for an indefinite period beyond the times limited by the vote. But it is expressly denied by the respondents that their treasurer had any authority to dispense with such payment, or did, in fact, dispense with such payment, and extend to the complainant a credit for the instalments; they deny that the complainant ever did offer to make any payment, until long after the time limited for that purpose, and until after they had in fact sold and disposed of the shares to other persons, as shares not taken, and given notice thereof to the complainant. That fact, stated by the complainant, being thus denied, and there being no other evidence of it, it cannot be taken as a fact proved, and so it does not appear that the complainant ever tendered the price of the shares, in compliance with the condition on which they were offered.
But we have not thought it necessary to decide this question, however; upon the preliminary question of jurisdiction we cannot perceive how or under what head of equity this suit can be maintained.
The complainant insists that a suit in equity may be maintained, under the clause of the revised statutes, which gives the court jurisdiction in equity in cases for the specific performance of a contract. Rev. Sts. c. 81, § 8. The clause is this: —
The supreme judicial court shall have power to hear and determine in equity, amongst others, “ all suits for the specific performance of any written contract.”
It would seem to be rather a forced construction to hold, *11 that the vote of a board of directors, in disposing of additional shares, pursuant to an act of the legislature, amongst its stockholders, offering to distribute the same proportionably to all those who should signify their desire to take them, would constitute a contract in writing between the corporation and each of such stockholders.
But the complainant was not himself a stockholder, in respect to these shares, and therefore not within the terms of the vote, if that were a written contract, to be specifically enforced. He was the assignee of those who were stockholders ©f then rights to subscribe for and take these extra shares. The company did not object to his right to take all the benefit which such an assignment would equitably give, and offered to pay him the premium beyond the par value, for which they were actually sold, which he did not incline to accept. When, therefore, it comes to a question of strict construction of a statute, whether they have entered into such a contract as the complainant has a right to have enforced against them, we are called upon to say whether such contract has been made with him. Again, the complainant alleges that the respondents were bound to convey to him 146 shares, but that they did, in fact, without his consent, convey and transfer the same 146 shares to other persons, for a valuable consideration, without notice to those purchasers. If so, they cannot rescind those sales to others, and convey the same shares to him, and therefore cannot specifically perform that contract, if they made one, by an actual transfer of the shares. If the legislature had provided by the act that, in apportioning the new stock, each existing stockholder should be entitled to a pro-portionable number of the new shares, or the same thing, after the increase of the stock warranted by the legislature, had been done by a vote of the company, and if the complainant had been such an existing stockholder, in regard to the share claimed, and if he had tendered the amount of the instal ments, as they became due, then he would have brought himself within the authority of Gray v. The Portland Bank, 3 Mass. 364. But what did that case decide ? It decided til at an action at law would lie: that the compauy, by their *12 agents and officers, bad done the plaintiff a wrong, for which an action on the case was the proper remedy.
In the case of Sargent v. The Franklin Insurance Co. 8 Pick. 90, the controversy was by persons claiming to be entitled to .■hares against the company; the right was regarded wholly as a legal right.
It was intimated in the course of the argument, that the bill might be sustained upon the ground that it is a suit brought to enforce a trust. We can perceive none of the characteristics of a trust in this transaction. Some authorities were cited to show that if a trustee has improperly sold out stock, constituting a trust-fund, he may be decreed to repurchase and replace it, as the most equitable and effectual mode of repairing the wrong. But it must first be determined, that the respondent is a trustee holding a trust-fund, before the court can take jurisdiction of the suit as a case in equity. Here no such trust-fund existed.
It was put forth as a strong ground of argument in the present case, that the respondents had proceeded contrary to law, in selling the complainant’s shares at private sale and not at public auction, pursuant to the statute, to enforce the payment of instalments; and the case of The Portland, Saco, and Portsmouth Railroad Co. v. Graham, 11 Met. 1, is relied upon as an authority. But this argument, we think, is founded' on a misapprehension of the law, and overlooks an obvious difference between the cases. The sale of delinquent shares, for assessments, applies to the case of an actual stockholder, one who, by entry on the books of the corporation, by the issue of a certificate or other appropriate evidence, is recognized by the company as an actual stockholder, one having a right to act and vote with other proprietors, in the concerns of the company. The mere subscription of an offer or request to become a proprietor and stockholder, not accepted or assented to by the company, does not make one a stockholder. Gray v. The Portland Bank, 3 Mass. 364. Indeed, the very ground of the plaintiff’s complaint is, that the respondents have refused to permit him to become a stockholder, and enjoy the rights of a stockholder; that he holds an executory agreement, which *13 they are equitably bound to perform, and by the. performance of which he would become a proprietor of the shares in question. If he states that he is already a proprietor; that, if he had not paid his instalments, his shares would have been sold as those of a delinquent proprietor, he states himself out of court; he' states that he has no occasion to seek for the performance of an executory contract, the only effect of which would be to make him the owner and proprietor of the shares in question. "Whether, therefore, the defendants were right or wrong, in selling the shares in question, at private sale, as shares not taken, makes no difference as to the equity jurisdiction of the court in the case stated.
The court are therefore of opinion that this bill cannot be maintained; not because the complainant has a plain and adequate remedy at law, but because he has stated no case in which this court has jurisdiction in equity.
Bill dismissed, without prejudice.