## Compton, et al. v. Moore, et al.

(Decided December 19, 1913).

## Appeal from Mercer Circuit Court.

1. Wills—When Will Not Be Declared Void For Uncertainty.—Where it may be ascertained with reasonable certainty from the whole context of a will the intention of a testatrix, it will not be declared void for uncertainty.

2. Wills.—If a devise over in remainder is void, and the devisee in remainder cannot take, the testator died intestate except as to the life estate devised; and the heirs at law have a present vested interest in the remainder.

3. Wills—Religious Societies—Devise to—Heirs May Take Steps to Declare Void.—Where under the prohibtion in Section 319, Kentucky Statutes, a church cannot take title to real estate, where being no provision for a forfeiture as in Escheat Statutes, it is not essential that the State shall institute proceedings to declare the devise void; the heirs at law, who take title if the devise is void, may do so.

4. Religious Societies—Section 319 Kentucky Statutes, Not Discriminatory Against.—Section 319 Kentucky Statutes is not discriminatory against churches or Societies of Christians, and was not so intended. It applies alike to all churches or societies of whatever faith or belief.

JAY W. HARLAN, EMMETT V. PURYEAR for appellants.

JOHN T. SHELBY, JAMES T. WILSON and B. F. ROACH for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

In 1910, Mrs. Rebecca Taylor Harlan died a resident of Mercer County; thereafter in April, 1910, her will, together with several codicils, was probated in the county court of that county.

The will and codicils, written wholly by her, are in full, as follows:

"I, Rebecca (Jenkie) Taylor Harlan, declare this my last will, revoking any other made at any time by me.

"I wish my executor to hold my farm and house in which I now live, until all my just debts are paid from rents of said property.

"I give to my niece, Irene Moore, all my furniture, jewelry, silver and china to be hers absolutely.

"I give my books to my nephew, Mead Moore.

"The house in which I now live and my farm in Boyle County given me by my son, Wellington Harlan, I leave in the care of and under the control of my niece, Irene Moore, in whom I have every confidence. I feel that I am carrying out the wishes of my husband and children

in doing this—the rents must not be alienated from her except in so far as I shall state in a private paper to her.

"In the event of her marriage or death the income from said property is to be divided among my nephews, William Moore, Meade Moore, Harlan Moore. In case of her marriage she will share with them the income from the aforesaid property. At the death of any one of these four heirs, the other three inherit the life interest until the last one. At the death of the last one of these four above named heirs, the property is to pass into the control of persons named by my above named heirs, for the use of the Protestant Episcopal Church, in Harrodsburg, Kentucky, to become absolutely the property of the Protestant Episcopal Church to be used for the benefit of this parish.

"Any attempt to set aside any of the provisions of my will must be resisted by my executor.

"I name as my executor Frank P. James, who has so kindly and efficiently managed my business affairs. He to act without security.

"May 8th, 1898.

"REBECCA TAYLOR HARLAN."

"As I do not feel able to rewrite my will I add this codicil that I may change one portion of said will. The house in which I now live can be sold if it is necessary, I leave it to my niece, Irene Moore, to decide—if said property is sold, Two Hundred and Fifty Dollars must be given to the Episcopal Church in Harrodsburg, Kentucky. I leave to my niece, Irene Moore, the disposal of the remainder. "REBECCA TAYLOR HARLAN."

"Harrodsburg, Kentucky, November 3rd, 1909."

"The property I leave to my niece, Irene Moore, during her life, I wish her to have and control whether she marries or not, this I would incorporate in the body of my will if I was now able to re-write my will. She is and has always been to me more like a child than a niece.

"REBECCA TAYLOR HARLAN.

"Harrodsburg, Kentucky, February 14th, 1910."

"Fifty dollars at each recurring Christmas must be given to my nephews. W. J. Moore, Fifty Dollars. At each recurring Christmas must be given to my nephew, Meade Moore, these small bequests I make to my nephews must prove in a very slight degree my appreciation of their kind thoughts of me this season.

"REBECCA TAYLOR HARLAN.

"Harrodsburg, Ky., Feby. 14th, 1910."

In May, 1911, the appellants, Compton and Maddox, heirs at law of Mrs. Harlan, filed this action against her executor and devisees, alleging in the first paragraph of their petition that the provisions of the will were so uncertain, ambiguous, and confused that it could not be ascertained from them what was the meaning of the testatrix, and praying that the same be declared null and void for that reason.

In the second paragraph of the petition they seek to have declared null and void the devise in remainder to the church, because as alleged it is void under the provisions of section 319 of the Kentucky Statutes, the allegation being that the farm referred to in the will embraces three or four hundred acres in Boyle County, Kentucky.

To the petition the executor, and devisee, Irene Moore, and the Episcopal Church, each demurred, and the lower court sustained each of their demurrers, whereupon the plaintiffs declined to plead further and the petition was dismissed, and they have appealed.

Whether that action of the lower court was correct involves the determination of these questions, (1) are the provisions of the will so confused, ambiguous, and uncertain as that its meaning may not be fairly ascertained; (2) is the question raised by the plaintiffs purely an academic one, and can the court, if the devise over to the church is void, grant them any present relief; (3) can the heirs at law raise the question of the validity of the devise over to the church, or must that question be raised in a direct proceeding by the State; (4) is section 319, of the Kentucky Statutes, discriminatory and, therefore, unconstitutional?

A careful reading of the will and codicils is convincing that the first question made by appellants can not be sustained. While she does not in terms give a life estate to her niece and three nephews, she expressly leaves the property in the care and control of Irene Moore, and provides that the rents must not be alienated from her except in the event of her marriage, when she shall, with her three brothers, share the income therefrom. The provisions that in the event of the marriage of Irene Moore the income from the property is to be divided between her and her three brothers, and the further provision that at the death of an one of these four, "the other three inherit the life interest until the last one," is conclusive that she intended each one of them to

have a life estate down to the last survivor of the four. This conclusion is strengthened by the facts; (1) that she did not undertake to devise the property to the church until after the death of the last of these four at which time she provided that it was to become *absolutely* the property of the church, and (2) in the second codicil she refers to it as "the property I leave to Irene Moore during her life."

There seems no reason to doubt from the context of these instruments that it was plainly the purpose first to give Irene Moore a life estate in the property devised, and thereafter to give her said three named nephews a joint life estate therein, the survivor among them to have a life estate in the whole.

That the question made by appellants is purely an academic one because of the alleged fact that the court could grant them no present relief if it should be decided that the devise over to the church was void, is untenable. Appellants are the heirs at law of the testatrix, and if the devise over to the church is void the testatrix, save as to the life estates referred to, died intestate as to the remainder interest in this property, and if she so died intestate, then appellants as her heirs at law inherit an interest in it and that interest, while the enjoyment of it is postponed, is a present vested interest, and one which they may sell and convey at any time, and realize upon.

Section 319, of the Kentucky Statutes, is as follows:

"No church or society of Christians shall be capable of taking or holding the title, legal or equitable, to exceeding fifty acres of ground; but may acquire and hold that quantity for the purpose of erecting thereon houses of public worship, public instruction, parsonage, or graveyard."

It is the contention of appellee that under the terms of this statute even though the church is incapable of taking or holding the title to this property, that the question can only be raised in a direct proceeding by the State for that purpose, and cites, Louisville School Board v. King, 127 Ky., 824; Miller v. Flemingsburg Turnpike Co., 109 Ky., 475; Krell-French Piano Co. v. Dengler, 145 Ky., 202, as upholding this view.

The Louisville School Board case was where the board under the provision of a statute that property in the city of Louisville which was escheated to the State should be vested in the school board for the benefit of the

schools in that city, sought to recover certain property which had been held by a Louisville Banking Company for a longer period than allowed by the statute, but which had, after the expiration of the statutory period and before any proceeding by the Commonwealth to escheat it, been sold and conveyed; and the court in that case only held that if a corporation does hold land in the face of the prohibition of the escheat statute the title will be good as against the State until it is invalidated in a direct proceeding by the State for that purpose.

The Case of Miller v. Flemingsburg Turnpike Co., 109 Ky., 475, was where a vendor of a tract of land to a Turnpike Company sought to recover the same, after the company had discontinued the use of the road under the provisions of a statute that such property should revert to the original owner; and there the court held that inasmuch as the land had been actually sold and conveyed by the owner to the company, and had not been acquired by it by condemnation proceedings, that the grantor could not recover, and the title of the company was valid until assailed by direct proceeding for that purpose.

In the case of Krell-French Piano Company v. Dengler, 145 Ky., 202, it was merely held that where one sells stock in one corporation to another corporation which is incapable under the law of acquiring it, the seller cannot thereafter raise the question of the buyer's lack of power to buy.

But all of these questions are essentially different from the one confronting us here; escheat statutes always provide for forfeiture of title to the Commonwealth or some sub-division of it; that is when a corporation or individual holds property which under the law it has no right to hold, the title thereto shall vest and be in the Commonwealth. From the very nature of these statutes, no one can enforce them except the Commonwealth because it alone is authorized to assert title.

But in this case we are dealing with an essentially different kind of statute; it no where provides for any forfeiture or escheat, but in unmistakable language provides that the class of societies therein named shall *neither take nor hold* title to real estate in excess of fifty acres. It has none of the characteristics of an escheat statute; it is on the contrary a Mortmain Statute, prohibiting in express terms the acquisition by the societies named of the title to any real estate in excess of the pre-

scribed number of acres. Escheat statutes are designed to take from corporations the title to lands theretofore lawfully held but which have been held for a longer period than allowed by law and in violation of law; the Mortmain Statutes are designed to *prevent acquisition* of land by corporations in violation of law. Escheat Statutes from their very nature must provide for forfeitures; in Mortmain Statutes which are intended to *prevent acquisition* of lands there is no necessity for a forfeiture provision. The State under an Escheat Statute is the party in interest, and, of course, it alone can go into court and demand a forfeiture; but in this case where we are dealing with Mortmain Statutes which positively prohibit the church from taking the title to this property, but which provides for no forfeiture to the State, the real parties in interest are the heirs at law of the testatrix, who will take it by inheritance if the devise is void.

The case of Kinney v. Kinney's Admx., 86 Ky., 610, was where the heirs at law of a decedent undertook to have a devise declared invalid under the terms of the same statute; but the court in that case held that the devise was to the church in trust to be applied to a charitable purpose and not for its own use, and was not therefore within the terms of the statutory prohibition.

It is significant, however, in that case the question was not raised as to the power of the heirs at law to make that question, and if it ever occurred to the attorneys or to the court there is nothing in the opinion to disclose it; but the court did in fact dispose of the case on its merits, and thereby inferentially at least recognized the right of the heirs at law to raise the question.

(In Re McGraw Estate, 111 N. Y., 66 (2 L. R. A. (O. S.), 387); St. Peter's Roman Catholic Church v. Romane, 104 Ill., 440; Church of Redemption v. Grace Church, 68 N. Y., 570; DeCamp v. Dobbins, 31 N. J. Eq., 671; Betts v. Betts, 4 Abb. N. C. (N.Y.,), 317.)

The remaining question is whether or not the statute is discriminatory against churches or societies of Christians, and, therefore, void.

Counsel for the church interprets the language of this section to apply to Christian Churches or societies of Christians only, and argues that in as much as it is not applicable to societies of Buddhists, Mohammedans,

or Jews, that it is discriminatory against Christian Churches and organizations, and void.

It may be well doubted whether when this enactment was first made in Kentucky—nearly a century ago— there was any religious organization in this State other than Christians; there can be no doubt that it was intended, and has been at all times intended to apply to all churches and religious societies.

It would be a startling thing to interpret a statute of Kentucky to be discriminatory against churches and societies of Christians when ninety-five per cent of the people of the State belong to or affiliate with churches of that faith.

On this question it is likewise significant that in the Kinney case, the question never occurred to either the court or counsel.

The question having been passed upon by demurrer in the lower court, and it not appearing in the record what real estate the church now owns, or whether it desires to use when it may get possession hereafter, any part of the real estate devised up to the limit of 50 acres, for the purposes set forth in the statute, we expressly withhold an expression of an opinion as to what it may take. For the reasons indicated the judgment is reversed for further proceedings consistent herewith.