Mordecia F. Ham Evangelistic Ass'n v. Matthews, Sheriff, et al.

June 8, 1945.

Thomas C. Fisher for appellants.

Lawrence S. Grauman for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The question is one of tax exemption. The answer is to be found in the intent and meaning of the term "religious society" as used in Section 170 of the Constitution of Kentucky, which exempts "all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto."

The appellant, Mordecai F. Ham Evangelistic Association, was organized in 1936 under the provisions of Section 879 et seq., Kentucky Statutes (now KRS 273.020 et seq.), which cover the incorporation of religious, charitable and educational institutions without capital

stock or private pecuniary profit. It holds title to residence property in Louisville of the value of about $15,000, which the Reverend Mordecai F. Ham occupies as a home. The corporation brought this suit against the assessing and tax-collecting officers of the state and county to enjoin the assessment and collection of taxes on this property.

The Reverend Mr. Ham has been engaged in conducting Christian evangelistic services throughout the country for forty years and more, and in recent years over the radio, independent of any religious denomination, or as extra-denominational. It appears that he is an ordained minister and a member of a local church, but the denomination is not disclosed. All receipts of money, which come from voluntary contributions, are credited to the account of the Association. Out of the account are paid the expenses of operation, including salaries of associates and helpers in the evangelistic field, the rent or cost of temporary tabernacles or tents, the cost of radiocasting, and the publication and distribution of religious tracts from the residence, in which is located also auxiliary radio broadcasting equipment. Financial aid is given to young men for theological education. No definite salary or fixed compensation is paid Dr. Ham, but all of his personal and living expenses and apparently whatever money he desires are paid out of the funds of the Association. He draws upon the account as he pleases without limitation of any kind save that the checks are also signed by the treasurer of the corporation, who it is said handles all the funds. Insurance is carried on his life for the benefit of the Association. No audit or accounting of funds has ever been made for any one. The incorporators of the plaintiff Association were the Reverend Ham and his wife.

They with two others are the officers and directors, the board being self-perpetuating. The usual formalities of meeting of directors and keeping of corporate records seem not to be observed. There are no members of the Association unless, as claimed by the appellant, the congregation and radio audiences and the numerous persons who make contributions are to be regarded as members.

The Articles of incorporation declare that the purpose of the corporation is ''the promotion of the work of

Christian evangelization, especially to promote the evangelistic work of Reverend M. F. Ham, but it shall have authority to promote the evangelistic work of any other evangelist whose work the Association may approve.''

Democracy is the outgrowth of Christianity. Although the constitutional decree of freedom of religion and worship embraces any faith, Compton v. Moore, 156 Ky. 544, 161 S. W. 540, 542, ours is a Christian nation. United States v. Macintosh, 283 U. S. 605, 51 S. Ct. 570, 575, 75 L. Ed. 1302. It is of interest to note that the preamble of the Constitution of Kentucky, like that of most every other state, contains or consists of a prayer of gratitude and invocation for our political and civil blessings. Notwithstanding all this, and the immeasurable benefit of religion to the structure of society, even in the temporal way, there is no inherent immunity in the church from liability for the support of the government. Indeed, that obligation finds sanction in the biblical injunction that every citizen should, ''Render unto Caesar the things that are Caesar's,'' the statement having special reference to the payment of taxes. Immunity or exemption must come from an express waiver of the sovereign. In Kentucky the waiver relating to charitable institutions, as it is educational, is very broad and liberal, but in respect to the church it is narrow and strict, as recently pointed out in City of Louisville v. Presbyterian Orphans Home Society, 299 Ky. 566, 186 S. W. 2d 194. The waiver relating to churches or religious societies is limited to ''places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship,'' limited as to area, and ''all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion,'' also limited as to area. Section 170, Kentucky Constitution.

It is a rule of general application that provisions for exemption from payment of taxes will be strictly construed, and all doubts and implications resolved against it. Gray v. Methodist Episcopal Church, South, Widows & Orphans Home, 272 Ky. 646, 114 S. W. 2d 1141. A claim to exemption must be clearly and positively established by proof of facts essential to bringing the claimant within the contemplation of the Constitution. ''Equality under

law is one of our cherished principles. Duties and rights are reciprocal. It is the duty of every citizen, corporate or natural, to bear his share of the cost of government for the protection and benefits which he receives from it.'' Kesselring v. Bonnycastle Club, 299 Ky. 585, 186 S. W. 2d 402, 403. And, as said in Commonwealth v. Trustees of Hamilton College, 125 Ky. 329, 101 S. W. 405, 406, ''the spirit in which this exemption from the burdens of taxation is allowed cannot be trifled with or evaded by any scheme or device that might defeat the purpose of the exemption.''

It is of interest, if not of pertinence, that the debate in the Constitutional Convention in relation to exemption from taxation was vigorous and extended. There was considerable support for the proposition that all church property should be taxed, and many participants in the discussion pointed to the experiences in ancient days of the evils of large tax-free accumulations of property by the church or religious societies. The clause relating to the exemption of ministers' homes was adopted by the narrow margin of one vote as an amendment to the report of the Committee on Revenue, the original including only places actually used for worship. Vol. II, pp. 2560, 2720, Debates of the Constitutional Convention of 1890.

It is ordinarily said that the primary use to which the property is put rather than its ownership is what determines whether it is tax exempt, Kesselring v. Bonnycastle Club, Inc., supra, although the character of the owner always sheds an important side light on the nature of the use. Kemp v. Pillar of Fire, 94 Colo. 41, 27 P. 2d 1036. In this case both the factors of ownership and use are of controlling importance or must be found to actually exist in order to declare exemption. This property meets the test of occupancy as the residence of a minister of the gospel. But that alone is not sufficient. The disputed question is the character of the owner. That was the decisive factor also in Commonwealth v. First Christian Church, 169 Ky. 410, 183 S. W. 943, Ann. Cas. 1918B, 525, in which it was held that title to a church had been conveyed to an individual and was, therefore, taxable, although the property was being used by the congregation for religious worship while another building was being erected. A like situation was presented in Trinity Temple Charities, Inc., v. City of Louisville 300 Ky. 172, 188 S.

W. 2d 91. It was the other factor, that of use, that made the property taxable in Broadway Christian Church v. Commonwealth, 112 Ky. 448, 66 S. W. 32, where a residence was owned by a church but not occupied as a home by its minister, who lived in his own house and received the rents from the parsonage. The Annotation of the subject, "Taxation: Exemption of Parsonage or Residence of Minister or Priest," in 13 A. L. R. 1196, will be found of interest. Here the legal title to the property is in a corporation organized as a religious body and with the avowed purpose of promoting the Christian religion, primarily through the activities of one man. And it seems to have functioned only through him and his assistants.

Distinction may be drawn between a religious corporation, which is but an inanimate person, a legal entity which possesses none other than temporal powers, and a church or body of communicants or group gathered in a common membership for mutual support and edification in piety, worship and religious observances, or a society of individuals united for religious purposes at a definite place or places. Fiske v. Beatty, 206 App. Div. 349, 201 N. Y. S. 441, affirmed 238 N. Y. 598, 144 N. E. 907; McNeilly v. First Presbyterian Church, 243 Mass. 331, 137 N. E. 691. It is not necessary for the group or society to be incorporated to be entitled to the benefit of the classification of "religious society." There are, and always have been, many such bodies unincorporated. In many instances a society exists without a corporation as its temporal status or representative. The Constitution looks beyond any incorporation to see the beneficial or real ownership, its nature and functions. It works that way, but perhaps in less degree, in relation to commercial corporations where it appears that the corporate body is being used as a shield or security from liability or to circumvent justice. In such a case, the conception of corporate entity apart from the persons composing it will be disregarded and not recognized beyond the point of reason or when used as a guise or invoked in support of an end subversive of policy. 13 Am. Jur., Corporations, Sec. 7; C. L. & L. Motor Express Company v. Achenbach, 259 Ky. 228, 82 S. W. 2d 335. We are not to be understood as implying that this corporation was organized or exists for any ulterior purpose. It seems to have been created as a matter of convenience and to perpetuate the work or system of evangelism of the Rev-

erend Ham after he shall have died. The point is the nature of the real owner of the property claimed to be exempt from the obligation to support the government. Looking beyond legal theory or fiction, in reality the corporation is but the alter ego of one man.

This leads to the consideration of whether he and his wife, employees and unattached and unorganized audiences and contributors collectively are to be regarded as a "religious society" in the contemplation of the Constitution. The words are to be taken in their ordinary acceptation, as understood by the framers of the Constitution and the people who adopted it. Any meaning of a term and all purposes apparently not within its contemplation must be excluded in the interpretation. The term "religious society" is an old one. It had in the English ecclesiastical law and in our own law, both statutes and judicial opinions, a well-understood meaning, being used interchangeably with "church" or some group organized and maintained for the support of public worship. The framers of the Constitution were familiar with all this. While we do not find the term to have been expressly defined by this court, it was commonly used in the generally accepted sense, and in accordance with designations or definitions given in the dictionaries and elsewhere as being an association or body of communicants or a church usually meeting in some stated place for worship or for instruction, or organized for the accomplishment of religious purposes such as instruction or dissemination of some tenet or particular faith or otherwise furthering its teachings. 54 C. J. 7; 45 Am. Jur., Religious Societies, Sec. 2; Fiske v. Beatty, supra; McNeilly v. First Presbyterian Church, supra; Riffe v. Proctor, 99 Mo. App. 601, 74 S. W. 409; Weld v. May, 63 Mass., 9 Cush., 181; People v. Duetsche Evangelisch Lutherische Jehovah Gemeinde Ungeanderter Augsburgische Confession, 249 Ill. 132, 94 N. E. 162; First Presbyterian Church v. Dennis, 178 Iowa 1352, 161 N. W. 183, L. R. A. 1917C, 1005; People v. Muldoon, 306 Ill. 234, 137 N. E. 863, 28 A. L. R. 857; Church v. Bullock, 104 Tex. 1, 109 S. W. 115, 16 L. R. A., N. S., 860. The Oxford English Dictionary defines "Society" as "Association with one's fellow man" and "A number of persons associated together by some common interest or purpose, united by a common vow, holding the same belief or opinion, following the same trend or profession, etc.; an association." The definition of "parsonages" as the

designation of property intended to be exempted from taxation carries the same connotation as "any religious society." Webster defines it as a house "appropriated by a parish or ecclesiastical society to the maintenance or use of the incumbent or settled pastor or minister." We may observe, however, that the term "religious society" is broader than a local church or congregation and embraces any board or agency of a general church or parent body, such, for example, as the Roman Catholic Church or the Methodist Church. Thus Cooley on Taxation, Sec. 742, states, "In order to be exempt as a 'religious society,' it is not necessary that the sole purpose be public worship in a church, and it has been held that the exemption includes a publishing house printing and distributing religious books," where the business was conducted by a general or parent church and the profits were for the benefit of superannuated preachers. Likewise residence property owned by an organization of a general church or religious society for use and occupancy by its bishops who may from time to time be designated to reside in the city where the parsonage is located. Bishop's Residence Company v. Hudson, 91 Mo. 671, 4 S. W. 435.

In this case there is no question but what this appellant corporation and the Reverend Mr. Ham are engaged in religious activities. The spread of the Christian religion has been most pronounced during periods of fervent evangelism. But we are constrained to hold that the ownership is lacking the element of a "society." As observed by the chancellor: "We could hardly conceive of a society, as we understand it from the broader term, existing without some time or another there is a getting together. The term society itself implies a getting together of its members, although it is true persons may worship God or even receive religious instructions without getting together." The many contributors and the audiences may be regarded as a kind of fellowship but not as a "society" within the meaning of the Constitution. There is no communion, no unity, no society. This is a one man organization; at least, as said by the chancellor, "Its whole operation is centered around one personality." He is not a pastor and the organization is not a church. He does not claim it to be. We are quite sure that the appellant nor the individuals it represents, is the type of religious organization whose parsonage or residence of the minister is tax free. If the property

should be held exempt under these circumstances, the decision would afford a facility or means for any individual engaged in religious service to escape payment of taxes on his residence.

The judgment that the property is taxable is accordingly affirmed.

Whole Court sitting.