CONGREGATION KOLLEL HORABONIM, INC., Appellant, v CLARA M. WILLIAMS, as Assessor of the Town of Ramapo, Respondent.

Second Department, June 19, 1978

## APPEARANCES OF COUNSEL

*Mark Landesman* for appellant.

*Kenneth H. Resnik* (*Arnold Becker* of counsel), for respondent.

### OPINION OF THE COURT

SHAPIRO, J.

This is a proceeding to review a tax assessment on real property. The appeal is from a judgment of the Supreme Court, Rockland County, which is in favor of the respondent and against the petitioner-appellant. The judgment should be reversed, with costs, and petitioner's application for exemption from the payment of real property taxes should be granted.

Petitioner is a religious corporation. It was organized and is operated exclusively for religious and educational purposes. Since its incorporation on July 17, 1973, it has conducted religious services and studies in various locations in the Town of Ramapo, using structures owned by other religious corporations. The parties have stipulated that the premises in which the petitioner presently conducts its religious services and studies are not used by petitioner exclusively, but are also used by the owner, which is itself a tax-exempt religious corporation. The only realty owned by the petitioner (the subject of this proceeding) is a one-family house in which petitioner's Rabbi lives with his family and maintains a study and office.

In the decision here under review, Special Term held that petitioner was not entitled to a parsonage exemption because such an exemption "is conditioned upon and must follow an exemption under Section 421 (1)(a) of the Real Property Tax Law." We do not agree.

The pertinent provisions of the New York Real Property Tax Law are sections 421 (subd 1, par [a]) and 462. Section 421 (subd 1, par [a]) reads: "Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section."

Section 462 reads: "In addition to the exemption provided in section four hundred twenty [since renumbered section 421] of this chapter, property owned by a religious corporation while actually used by the officiating clergymen thereof for residential purposes shall be exempt from taxation."

In holding that section 462 was limited by section 421 (subd 1, par [a]) the Special Term unduly restricted the effect of section 462 which, by its very terms, was intended to give a tax exemption *"[i]n addition* to the exemption provided" in section 421 (subd 1, par [a]) (emphasis supplied).

In *St. Matthew's Lutheran Church for Deaf v Division of Tax Appeals* (18 NJ Super 552, 554), the court was dealing with a statute somewhat similar to our own, which exempted a "building actually occupied as a parsonage by the officiating clergymen of any religious corporation of this state". The Division of Tax Appeals denied the exemption. In overturning that ruling, the court said (p 556): "The effect of this ruling is that no newly created and independent religious organization could have a tax-free parsonage unless and until it acquired by some means a church building of its own. While immunity from taxation must come from express waiver of the sovereign, the language employed should not be strained to prevent the waiver."

We agree with that reasoning.

HAWKINS, J. (dissenting). I dissent and would affirm Special Term's holding sustaining the respondent's determination denying tax exemption, as a parsonage, to appellant's residential property.

The majority's holding is that Special Term "unduly restricted" the scope of section 462 of the Real Property Tax Law —the parsonage exemption—which provides exemption for real property "[i]n addition to the exemption provided" in section 421 (subd 1, par [a]). The latter section is the primary legislative grant of exemption. The majority cites *St. Matthew's Lutheran Church for Deaf v Division of Tax Appeal* (18 NJ Super 552).

The applicable statutes, in my opinion, do not support the majority's position. Section 421 (subd 1, par [a]) of the Real Property Tax Law is the broad grant which provides that real property owned by a corporation used for religious purposes shall be exempt from taxation. Section 462 must be read in conjunction with section 421, for its very introductory language states: *"In addition to the exemption provided in section four hundred twenty of this chapter* [since renumbered section 421] property owned by a religious corporation while actually used by the officiating clergymen thereof for residential purposes shall be exempt from taxation." (Emphasis supplied.)

It thus follows that for exemption to attach to a parsonage or manse, the religious body must own other real property. This is in accord with the historic connection between a parsonage and the church. Black's Law Dictionary (4th ed) defines manse as (p 1116):

"In old English law, a habitation or dwelling, generally with land attached. Spelman.

"A residence or dwelling-house for the parish priest; a parsonage or vicarage house. Cowell. Still used in Scotch law in this sense."

Black's Law Dictionary defines a parsonage as (p 1273):

"A certain portion of lands, tithes, and offerings, established by law, for the maintenance of the minister who has the cure of souls. Tomlins.

"The word is more generally used for the house set apart for the residence of the minister."

The rationale for a dual or multiple tax exemption derives historically from arrangements whereby ministers were supported. The parsonage has its origins in the "glebe" which, as Black's Law Dictionary notes, is derived from ecclesiastical law and means (p 819) "the land possessed as part of the endowment or revenue of a church or ecclesiastical benefice."

In colonial times it was not uncommon for the parsonage to include not only a residence, but sufficient land so that the minister could work the land and support himself and his family. Additionally, the customary arrangement was for the parsonage or rectory to be contiguous or attached to the church itself.

Reverting to the authority of *St. Matthew's Lutheran Church* (18 NJ Super 522, *supra*), apart from the New Jersey statute not being identical with ours, the facts differ markedly. There the minister was performing a very special and unique function: ministering to the deaf. Although the congregation with which he was associated did not own a church building, the opinion carefully noted (p 558): "He has an established congregation in Newark which meets regularly and at a fixed place."

More importantly, the New Jersey Appellate Division, as if in anticipation, sought to limit its holding, stating (p 557): "In construing this language it would not be reasonable to conclude that the Legislature intended to exempt the residence of an itinerant evangelist. *Ham Evangelistic Association v Mat-*

*thews,* 300 Ky. 402 * * * Otherwise any individual whose home is in New Jersey and who incorporated here for religious purposes and who evangelized all over the country would be entitled to the immunity."

*St. Matthew's Lutheran Church* was decided in 1952. In 1965 the same court was confronted with a similar religious tax exemption matter. In *International Missions v Borough of Lincoln Park* (87 NJ Super 170), the court denied a tax exemption and quoted the above language from *St. Matthew's Lutheran Church.* In *International Missions* the minister had no fixed congregation; nor was there any church property owned by the religious corporation in New Jersey. In denying a tax exemption, the court dilated upon its reservations in *St. Matthew's Lutheran Church* (p 176): "Our approach should be that of the court in *St. Matthew's Lutheran Church,* above, when it was called upon to decide the exemption to be accorded parsonages. The court there held that the parsonage exemption could not reasonably be applied to every home occupied by a minister; otherwise, as was said in our quotation from that case, 'any individual whose home is in New Jersey and who incorporated here for religious purposes and who evangelized all over the country would be entitled to immunity.' There has to be something 'more localized and more or less permanent, both as to a character of the pastor and nature of the persons served by him.' "

In discussing the two New Jersey cases, I do not mean thereby to imply that the Rabbi occupying the residence owned by the congregation is "evangelizing"; nevertheless, Special Term appears to be justified in holding that he is "peripatetic." The following sentence from Special Term's opinion appears to summarize the matter aptly: "The religious observance aspect of petitioner's function is peripatetic, moving from place to place over the relatively short period of its existence and using by consent structures owned by others for religious observance."

In sum, if it is the intent of the Legislature to exempt a minister's home which, although owned by a congregation, fixed or floating, is neither attached to nor associated with, a church "owned" by the church body, the remedy is readily available: it can amend section 462 of the Real Property Tax Law.

MOLLEN, P. J., and TITONE, J., concur with SHAPIRO, J.;

HAWKINS, J., dissents and votes to affirm the judgment, with an opinion, in which HOPKINS, J., concurs.

Judgment of the Supreme Court, Rockland County, dated December 27, 1976, reversed, on the law, with costs, petition granted, and respondent is directed to list petitioner's property on the tax-exempt roll.